| | |
|---|---|
| **UNITED STATES DISTRICT COURT** <br> **SOUTHERN DISTRICT OF NEW YORK** | USDC SDNY <br> DOCUMENT ELECTRONICALLY FILED <br> DOC#: _____ <br> DATE FILED: 3-29-17 |

**BAKKEN RESOURCES, INC.,**

        **Plaintiff,**

-against-

**JOSEPH R. EDINGTON, JEROD EDINGTON, RYAN EDINGTON, IWJ CONSULTING GROUP, INC., TRIAX CAPITAL MANAGEMENT, INC., MARYCLIFF INVESTMENT CORP., and AMERICAN CORDILLERA MINING CORP.,**

        **Defendants.**

15-cv-08686 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Bakken Resources, Inc. brings this suit against Defendants Jerod Edington, Ryan Edington, Joseph R. Edington, IWJ Consulting Group, Inc., Triax Capital Management, Inc., Marycliff Investment Corp., and American Cordillera Mining Corporation, alleging that Defendants engaged in a conspiracy to defraud them in violation of the Civil Racketeering Influenced and Corrupt Organizations Act, the Securities Exchange Act of 1934, the Securities Act of 1933, and other related common law claims, in connection with a reverse merger transaction. Defendants have moved to disqualify Plaintiff's counsel, Wesley Josiah Paul and the Paul Law Group, LLP. Plaintiff opposes the motion and also has filed a related motion for attorney's fees. For the reasons that follow, Defendants' motion is denied without prejudice. Plaintiff's motion for attorney's fees also is denied.

## BACKGROUND

**I.    Factual Background**

    Plaintiff's Amended Complaint is 147 pages long, and the Court only recites those facts necessary to contextualize Defendants' pending motion. *See* ECF No. 41 ("Am. Compl."). In

short, Plaintiff alleges that Joseph R. Edington ("Edington"), members of his family, and entities associated with him engaged in a variety of fraudulent behavior in connection with facilitating a reverse merger that ultimately resulted in the creation of Bakken Resources, Inc., the Plaintiff here. In a reverse merger transaction, a publicly-traded company with few or no assets merges with a non-public company that has assets or business operations, thereby creating a publicly-traded company with assets. Am. Compl. ¶ 52.

Edington first met Val Holms, a former plaintiff in this action, in late 2009 and proposed that Holms engage in a reverse merger transaction to create a public company holding certain mineral assets Holms owned in North Dakota. *Id.* ¶¶ 57-60. Edington suggested they use a shell company he controlled, APD Antiquities, Inc. ("APD"), as the public company in the reverse merger. *Id.* ¶ 117. Ultimately, this transaction did not close. *Id.* ¶¶ 161-65. Plaintiff alleges that Edington made numerous misrepresentations to Holms and others during the course of this aborted transaction. Among other things, Plaintiff alleges that Edington failed to disclose that he was subject to a permanent injunction by the Securities and Exchange Commission ("SEC"). *Id.* ¶¶ 15, 105-06.

After the APD reverse merger fell through, Edington proposed that they use Multisys Language Solutions ("MLS"), another public shell company allegedly controlled by Edington, for the reverse merger. *Id.* ¶¶ 169-72. Unlike the transaction with APD, the parties successfully merged MLS with Holms Energy, LLC, a private company which held Holms' mineral rights. The transaction closed in November 2010. *Id.* Plaintiff alleges that Edington made misrepresentations and engaged in self-dealing during the course of this transaction as well. *See, e.g., id.* ¶¶ 78-81, 85-87. Plaintiff further alleges that, after the reverse merger was finalized, Edington and others continued to harm Plaintiff through a number of malicious prosecutions brought in state court. *Id.* ¶¶ 396-423.

Both before and during this same time frame, Plaintiff's counsel Paul had numerous interactions with Edington and represented entities that Edington was "consulting for." ECF No. 60 (Declaration of Joseph R. Edington dated Apr. 28, 2016 ("Edington Decl.")), at ¶ 3. Edington contends that Paul also represented him, personally. *Id.* Paul was involved in the formation and private offering of LPath Therapeutics, Inc. *Id.* ¶¶ 4-6. Edington also solicited SEC-compliance advice from Paul, while Paul sought Edington's help in identifying public shell companies for use in reverse merger transactions with Paul's clients. *Id.* ¶¶ 9-10; Ex. B at 3-7.[1] According to Edington, in some instances, upon identifying a viable company for a reverse merger, Paul would prepare offering documents, act as an escrow agent, or serve as attorney for the newly-formed company. Edington Decl. ¶ 19. Edington does not identify any companies besides LPath Therapeutics for which Paul served any of these functions, however.

Paul also was involved in the Bakken transaction, both prior to being retained as Bakken's counsel and after. Edington Decl. ¶¶ 12-15; Ex. B. at 10-11. Neither party pinpoints precisely when Bakken retained Paul, but it appears to have been some time in the first half of 2011. *See* Am. Compl. ¶¶ 102-06; Edington Decl. ¶¶ 8, 13-16. Edington states that, prior to Bakken retaining Paul, he and Paul "discussed the formation and private offering undertaken by Multisys Language Solutions." Edington Decl. ¶ 12.

## II. Procedural Background

On June 7, 2016, Defendants moved to disqualify Paul and his firm. ECF Nos. 58 ("Defs' Motion"), 59 ("Defs' Memo."), 60 (Edington Decl.). Plaintiff opposed the motion, but due to Defendants' repeated electronic filing difficulties, Plaintiff's response was docketed after Defendants' reply. ECF Nos. 61 ("Defs' Reply"), 62 ("Pl's Memo."). Plaintiff also moved for its attorney's fees and costs incurred in opposing the motion. ECF No. 63.

---

[1] Citations to Exhibit B of Edington's declaration are to the ECF pages numbers.

## LEGAL STANDARD

A court's authority to disqualify attorneys "derives from [its] inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Decisions regarding disqualification balance a party's right to choose his or her own attorney with the need to preserve the integrity of the legal profession and the court system. *Id.* Although motions for disqualification are governed by the law of this Circuit, courts often look for guidance in the relevant rules of professional conduct. *Id.*

### I. Disqualification under the Successive Representation Rule

Rule 1.9(a) of the New York Rules of Professional Conduct advises that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client" without the former client's informed consent. In *Hempstead Video*, the Second Circuit explained that an attorney who engages in successive representations may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

409 F.3d at 133 (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).

A substantial relationship exists between an attorney's current and prior representations "where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) (citation and internal quotation marks omitted); *see also Revise Clothing, Inc. v. Joe's*

*Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 392 (S.D.N.Y. 2010) ("relationship between issues in the prior and present cases" must be "patently clear," "identical," or "essentially the same") (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739-40 (2d Cir. 1978)). If a substantial relationship is found, under the third *Hempstead* factor, an irrebutable presumption of shared confidences arises where the same individual lawyer participated in the prior and current representations. *Prevezon Holdings*, 839 F.3d at 240-41. The presumption of shared confidences within a firm remains rebuttable, however. *See Hempstead*, 409 F.3d at 133.

## II. Disqualification under the Witness-Advocate Rule

New York Rule of Professional Conduct 3.7(a) provides that, with certain exceptions that do not appear relevant here, "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." Disqualification related to potential violations of Rule 3.7(a) is designed to address the risks that:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). As suggested by Rule 3.7(a), the lawyer's testimony also must be "necessary" to the proceeding. When considering a motion to disqualify based on the witness-advocate rule, "the Court's inquiry does not focus on whether the attorney possesses discoverable knowledge, but rather whether trial of the case will in fact require his testimony." *Wachovia Bank, Nat. Ass'n v. Focus Kyle Grp., LLC*, 896 F. Supp. 2d 330, 332 (S.D.N.Y. 2012). The court "examine[s] factors such as the significance of the matters, weight of the testimony, and availability of other evidence." *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010) (citation and internal quotation marks omitted).

5

Generally, disqualification under Rule 3.7(a) "is triggered only when the attorney actually serves as an advocate before the jury." *Finkel*, 740 F. Supp. 2d at 373 (citing *Murray*, 583 F.3d at 179). However, courts occasionally have found it appropriate to disqualify an attorney at an earlier stage. *See, e.g., Sea Trade Mar. Corp. v. Coutsodontis*, No. 09-cv-0488 (BSJ) (HBP), 2011 WL 3251500, at *11 (S.D.N.Y. July 25, 2011) (dismissal where clear that attorneys would be crucial trial witnesses); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-cv-3291 (NGG), 2011 WL 318090, at *3 (E.D.N.Y. Feb. 1, 2011) (plaintiff would not agree to forgo attorney serving as trial counsel).

Rule 3.7(b)(1) address imputation to a witness-advocate's law firm and applies where "it is apparent that the testimony may be prejudicial to the client." To prevail on a motion to disqualify under this provision, the movant must show "by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray*, 583 F.3d at 178-79.

## DISCUSSION

**I. Defendants' Motion to Disqualify Plaintiff's Counsel under the Successive Representation Rule is Denied without Prejudice**

Defendants assert that Paul represented both Edington and the companies for which he consulted, and that those prior representations are substantially similar to Paul's current representation of Bakken in this action. *See* Defs' Memo. at ¶¶ 21-34; Edington Decl. ¶ 2. While Edington has provided the Court with information and email correspondence supporting the inference that Paul represented certain Edington-affiliated entities, Edington has not provided a factual basis on which the Court could find that Paul represented any of the Defendants in this action. Paul rejects the assertion that he represented Edington, personally, and notes that representing an entity is different than representing its principals. Pl's Memo. at ¶¶ 9-13. In the

6

absence of a finding that any Defendants are, in fact, former clients of Paul, the successive representation rule is not implicated, and neither Paul nor his law firm need to be disqualified.

First, Edington does not contend that Paul represented any of the other individual Defendants in this action. He also does not claim that any of the entities to which Paul provided legal advice in the past are the corporate Defendants here. Second, while the emails Edington has attached as an exhibit to his declaration show that he and Paul had a cordial professional relationship, it is not clear from the face of the documents that Paul represented Edington, personally. *See, e.g., Med. Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F. Supp. 2d 296, 307 (S.D.N.Y. 2008) (discussing six factors to be considered in evaluating existence of attorney-client relationship). Taking the categories of emails in turn, nothing about Paul asking Edington to identify potential shell companies for use in a reverse merger with *Paul's own clients* suggests that Paul was representing Edington in that interaction or in any subsequent transaction. *See* Edington Decl., Ex. B at 2-4. Nor does Paul referring "transaction consultant" business to Edington suggest an attorney-client relationship. *Id.* at 5-6. Finally, Edington provides two emails in which he solicited SEC-compliance and banking regulatory guidance from Paul in connection with transactions for unidentified companies. *Id.* at 7-8. Because the nature of the transactions, including the entities involved and their relationship to Edington, is not clear from the face of the emails and Edington does not describe the transactions further, it is impossible to tell the role Paul served in these communications. Accordingly, on the present record, neither Paul nor the Paul Law Group will be disqualified on this basis.[2]

---

[2] Although the Court has no need to reach the question of whether any of Paul's prior representations of Edington-affiliated entities is "substantially similar" to the issues in this action, Defendants' argument regarding Paul's knowledge of Edington's reverse merger "playbook" appears to require an expansion of that concept. *See, e.g., Olajide v. Palisades Collection, LLC*, No. 15-cv-7673 (JMF), 2016 WL 1448859, at *3 (S.D.N.Y. Apr. 12, 2016) ("[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type, even though the subsequent representation involves a position adverse to the prior client.") (quoting N.Y. R. Prof'l Conduct 1.9, cmt. 2) (internal quotation

## II. Defendants' Motion to Disqualify Paul under the Witness-Advocate Rule is Denied without Prejudice

There seems to be no dispute that Paul represented Bakken during the course of a significant portion of the alleged conduct by Edington and the other Defendants, and that Paul interacted with Defendants in his role as counsel for Bakken. Defendants assert that the many references to company counsel in the Amended Complaint are references to Paul. Defs' Memo. at ¶ 2; *see, e.g.*, Am. Compl. ¶¶ 236, 276-81, 303, 316, 320, 365-68; *see also* Edington Decl., Ex. B at 10-11. Paul does not deny this, and instead argues that his testimony is not "necessary" within the meaning of the law because other witnesses and documentary evidence can be used to make the same points. *See* Pl's Memo. at ¶¶ 37-38. The Court agrees.

While Defendants highlight the many references to Paul in the Amended Complaint, it is not clear to the Court that proof of these scattered references will be required to prove Plaintiff's case. The two concrete examples Defendants raise illustrate the problem. First, Defendants argue that Paul is a necessary witness on the question of jurisdiction and venue because he was present at the meetings in New York relied upon to establish venue in this District and personal jurisdiction over the Defendants. Defs' Memo. at ¶¶ 44-45; *see also* Am. Compl ¶¶ 4-6. However, based on Edington's declaration, it appears that these facts are not in dispute—the meetings, in fact, occurred. *See* Edington Decl. ¶¶ 13-15. Moreover, based on the facts alleged in the Amended Complaint and corroborated by Edington's declaration, there are at least three other witnesses to these meetings who could be called to testify should testimony on this point be required. Second, Defendants argue that Paul is a necessary witness regarding Edington's

---

marks omitted); *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 273 (E.D.N.Y. 2015) ("[D]isqualification may be warranted in rare cases where an attorney had extensive access to and insight into the client's strategies on issues of a similar subject matter to the legal issues in question, occasionally termed knowledge of the client's 'playbook.'"); *id.* at 275 (collecting cases discussing extensiveness of relationship required).

alleged non-disclosure of the SEC injunction against him. Defs' Reply at ¶ 22. Paul is not alleged to have been a witness to any disclosure or lack thereof prior to being retained by Bakken sometime in 2011, nor could he have been. That Paul may have been aware of the injunction prior to his retention by Bakken is of no import to Plaintiff's claim that Edington failed to disclose the injunction to Bakken prior to that.

While the scope of Paul's involvement in the underlying facts of this case does give the Court pause, Defendants simply have not met their heavy burden to disqualify Paul at this stage. *See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 422-23 (S.D.N.Y. 2015) (attorney's testimony not necessary where moving party failed to explain why they would need to offer it given availability of other witnesses); *Focus Kyle Grp.*, 896 F. Supp. 2d at 332 (attorney who was "just one of many persons with personal knowledge of material facts" not disqualified); *cf. Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 791 (S.D.N.Y. 2015) (attorney disqualified where he was "in the best, or only, position to testify about" relevant contracts and events). On the present record, Defendants have not established the necessity of Paul's testimony to either Plaintiff's case or their own defense. Accordingly, Defendants' motion to disqualify Paul based on his role as a potential witness is denied without prejudice. If, during the course of this litigation, it appears that Paul's testimony will be required, Defendants are free to move to disqualify Paul and, if that testimony is prejudicial to Plaintiff, to disqualify the Paul Law Group pursuant to Rule 3.7(b).

## CONCLUSION

For the reasons set forth above, Defendants' motion to disqualify Paul and the Paul Law Group is denied without prejudice. However, Defendants' motion was not so lacking in merit that Plaintiff is entitled to its attorney's fees. The Court therefore denies Plaintiff's motion for its

fees and costs incurred defending the disqualification motion. The Court will hold a status conference in this matter on April 13, 2017, at 10:30 a.m. The parties (and/or counsel) should appear in person in Courtroom 1306 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, on the date and time specified above.

**SO ORDERED.**

Dated: March 29, 2017
       New York, New York

                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**