Oliver H. Goe
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
800 North Last Chance Gulch, Suite 101
PO Box 1697
Helena, MT 59624
Telephone: (406) 443-6820
Facsimile:   (406) 443-6883
Email: oliver@bkbh.com

*Attorneys for Plaintiff*

MONTANA FIRST JUDICIAL DISTRICT COURT, LEWIS & CLARK COUNTY

| | |
|---|---|
| BAKKEN RESOURCES, INC., | Cause No. CDV 2016-612 |
| Plaintiff, | |
| v. | **AFFIDAVIT OF WESLEY J. PAUL** |
| VAL M. HOLMS, ALLAN G. HOLMS, TODD JENSEN and ALLEN COLLINS, | |
| Defendants. | |

STATE OF MONTANA       )
                                       :ss
County of Lewis and Clark   )

I, Wesley J. Paul, being first duly sworn upon my oath, depose and state:

1. I am over eighteen years of age and reside in _QUEENS_, New York.

2. I am the outside corporate and securities counsel for Bakken Resources, Inc. (the "Company").

3. I have served in such capacity for the Company since approximately April 2011.

4. I have represented multiple publicly-reporting companies since I started my practice in 1996.

5. The Company registered as a publicly-reporting Company under Section 12(g) of the Securities and Exchange Act of 1934, as amended, by the filing of a Registration Statement on Form 8-A with the SEC on April 20, 2009 (the "12g Registration").

1636701/5364.001

6. 12g Registration obligates a publicly-reporting Company to, among other things, file period and current reports with the SEC such as 10-Ks, 10-Qs and 8-Ks.

7. The Company filed a Form RW with the SEC on December 16, 2011. This Form RW withdrew the registration statement that was first filed with the SEC on or around December 30, 2010 (the "Registration Statement").

8. The Registration Statement sought, among other things, to register certain specified shares of stock of the Company for resale in the public markets.

9. The Registration Statement does not amend, modify or otherwise impact the 12g Registration. Filing the Form RW referenced above does not impact the 12g Registration.

10. 12g Registration of the Company is usually withdrawn by means of filing a Form 15 with the SEC.

11. No Form 15 has been filed with the SEC by the Company.

12. The Company has communicated to the SEC on a regular basis since March 2015 to discuss matters including the filing of the Company's required public filings.

13. One purpose of such filings is to affirm to the SEC the Company's intention to remain a publicly-reporting company under Section 12(g). Summaries of three such meetings are attached as Exhibits 11-13.

14. Since the Company is registered under Section 12(g) of the Securities Exchange Act of 1934, shareholders who beneficially have 5% or more of the Company's securities are required to file either a Schedule 13G or Schedule 13D and provide.

15. Shareholders who have beneficial ownership of securities include those who have voting control of securities.

16. Shareholders who do not file a Schedule 13G or Schedule 13D who are required to do so are not permitted to take actions relating to such securities, including voting together to change a company's board of directors.

1636701/5364.001

17. After the appropriate shareholders file a Schedule 13G or Schedule 13D, such shareholders are required to wait ten days before taking action relating to such securities described on Schedule 13D or Schedule 13G.

18. As of today, neither Allan Holms or any party who purportedly provided Allan Holms a proxy on or around July 20, 2016 has filed a Schedule 13G or Schedule 13D (or any amendments) with the SEC.

19. I have reviewed the Exhibits to the Complaint, Amended Complaint and to the Brief and Supplemental Brief in Support of BRI's Motion for TRO and Injunctive Relief and they are true and correct copies of what they purport to be.

20. I have reviewed the allegations of the Complaint and Amended Complaint and I believe them to be true and accurate.

DATED this 9th day of August, 2016.

_____
Wesley J. Paul

On this 9th day of August, 2016, before me, the undersigned, a Notary Public in and for the State of Montana, personally appeared **Wesley J. Paul**, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal on the day and year first above written.



KATHLEEN SUMMERS
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
June 01, 2019

_____
NOTARY PUBLIC FOR THE STATE OF MONTANA

1636701/5364.001



**PAUL LAW GROUP**
Limited Liability Partnership

Wesley J. Paul
wpaul@paullawgrp.com

902 Broadway, FL 6
New York, NY 10010

T: 646.202.2532 | F: 646.514.6829

September 21, 2015

H. Roger Schwall
Assistant Director
United States Securities and Exchange Commission
Washington, D.C. 20549

     Re:    <u>Bakken Resources, Inc.</u>

Mr. Schwall:

We are counsel to Bakken Resources, Inc. ("BKKN").

On September 16, 2015, BKKN hosted a third update call with the U.S. Securities and Exchange Commission ("Staff" or "SEC"). The first two calls took place on March 20 and June 25 of 2015. BKKN's auditors, MaloneBailey, were present for the June and September 2015 calls.

The purpose of this series of calls with the Staff was to provide an update on BKKN's internal investigation and to provide an anticipated timeline for BKKN to regain filing compliance.

Mr. Schwall requested that BKKN prepare and file this letter following the September 16, 2015 call.

**Background and Current Status**

In late November and early December 2014, BKKN discovered certain transactions that may have been unauthorized. The transactions potentially involved payments to a private entity controlled by BKKN's Chairman and Chief Executive Officer, Val M. Holms.

BKKN initially responded by forming an audit committee in December of 2014 and asking Mr. W. Edward Nichols to rejoin BKKN's Board of Directors as chairman of the audit committee. Mr. Nichols was previously a director of BKKN from February 2012 to June 2014. Mr. Nichols' biography indicated that he had audit committee experience with other public companies.

Mr. Nichols began his investigation in January 2015. In late February 2015, BKKN identified a material conflict of interest that prevented reliance on Mr. Nichols' forthcoming report. Mr. Nichols was then asked to resign from the audit committee. Mr.



EXHIBIT

11

SEC Correspondence
September 21, 2015
Page 2

Nichols chose to resign from the Board of Directors entirely.  Mr. Nichols' March 12, 2015 resignation letter is attached to BKKN's Current Report on Form 8-K, filed with the SEC on March 17, 2015.

Immediately after Mr. Nichols' resignation as a board member, BKKN retained a new investigator named Shirley Spira.  Ms. Spira is a New York City attorney with experience investigating corporate fraud.  Ms. Spira's staff includes a fact investigator and a securities attorney.

On March 24, 2015, upon the commencement of Ms. Spira's investigation, BKKN's Chairman and CEO, Val M. Holms, voluntarily began an indefinite, paid leave of absence, pending the outcome of the investigation.  Information relating to Mr. Holms' leave of absence was disclosed in BKKN's Current Report on Form 8-K, filed with the SEC on March 30, 2015.

BKKN then announced in a press release attached to its Current Report on Form 8-K, filed with the SEC on April 15, 2015, that BKKN's auditors are awaiting the finalized results of and responses to Ms. Spira's internal investigation before issuing an audit opinion.  As a result, BKKN has been unable to file an Annual Report for the year ended December 31, 2014 or any Quarterly Reports since January 1, 2015.

Ms. Spira presented her initial investigation report in person to BKKN's Board of Directors on August 3, 2015.  BKKN's auditors were present at that presentation.  The initial Spira report found evidence of a potential kick back in the amount of $200,000 to Mr. Holms in connection with a transaction that took place in 2011, as well as potential breaches of Mr. Holm's employment agreement.  Ms. Spira's report also raised questions about the adequacy of Bakken's reporting of certain related person transactions.

BKKN provided some comments to Ms. Spira's report and asked Mr. Holms to respond to Ms. Spira's initial findings.

Mr. Holms issued a written response to the initial Spira Report, presenting that response in person to BBKN's Board of Directors and auditors on September 10, 2015.  Mr. Holms' presentation and report identified certain missing information in the Spira Report, maintaining that the purported kickback was actually repayment of an existing personal loan.

Ms. Spira informed BKKN that she expects to provide a supplemented report in October 2015.

BKKN has been proactive in informing the Staff and BKKN's auditors, MaloneBailey, with respect to BKKN's internal investigation.  As noted above, BKKN initiated a series of update calls with the Staff.  BKKN continues active discussions and communications with its auditors about completing all necessary audits and quarterly financial reviews.

SEC Correspondence
September 21, 2015
Page 3

## Actions Taken by BKKN

As a result of BKKN's internal investigation, the Board of BKKN has authorized the following actions, pending management's final review:

1. Engaging an independent forensic accountant to determine the financial impact on all material transactions involving BKKN since 2011;
2. Engaging additional independent persons to serve a members of BKKN's Board of Directors;
3. Implemented new accounting and financial procedures and policies to rapidly identify potential problematic financial transactions;
4. Prepared an extensive 47-page legal memo on transactions with related persons, which contained new procedures for inquiring and identifying potential related person transactions on at least a quarterly basis (where this memo will also be provided to all future directors and officers of BKKN);
5. Approved a new employee handbook with delineated responsibilities for BKKN's officers;
6. Engaged special employment counsel for advice on "best-practices;"
7. Suggested certain bylaw amendments for the purpose of preserving shareholder value; and
8. Filed a lawsuit to recover funds misappropriated by a third party (Bakken Resources, Inc. v. ProLand Services, LLC et al., 15-cv-00065(SHE), filed with the United States District Court for the District of Montana on July 10, 2015).

BKKN expects to review Ms. Spira's additional report and may adopt additional measures following such review.

BKKN's goal is to obtain compliance with its reporting obligations by no later than the end of the year. BKKN plans to have a timely annual meeting of the shareholders prior to the end of 2015. BKKN will file 10-Qs for 2015 and the 10-K for 2014 once resolution of the present issues permits our auditors to issue an opinion, though some of the Company's other reports may be subject to restatements for unrelated reasons that predate those at hand.

BKKN also continues to have discussions with its auditors about whether further restatements are necessary to BKKN's earlier-filed annual reports in 2011 and 2012. Bakken's current view is that, based on BKKN's review of Ms. Spira's initial investigation, no further restatements are necessary at this time.

We are happy to discuss any questions the Staff may have.

Sincerely,

/s/ Wesley J. Paul
Wesley J. Paul

**Submission Data File**

| General Information | |
|---|---|
| Form Type* | CORRESP |
| Contact Name | |
| Contact Phone | |
| Filer CIK* | 0001450390 (BAKKEN RESOURCES INC) |
| Filer CCC* | vk9yq$dn |
| Notify via Website only | No |
| Return Copy | No |
| (End General Information) | |

| Document Information | |
|---|---|
| File Count* | 2 |
| Document Name 1* | bakken_corresp.htm |
| Document Type 1* | CORRESP |
| Document Description 1 | Correspondence |
| Document Name 2* | bakken_correspx1x1.jpg |
| Document Type 2* | GRAPHIC |
| Document Description 2 | Graphic |
| (End Document Information) | |

| Notifications | |
|---|---|
| Notify via Website only | No |
| E-mail 1 | manila.production@dg3.com |
| (End Notifications) | |

EXHIBIT

12

DG3 Production Team    Bakken Resources Inc.    01/21/2016 04:01 AM
301267 - Rev 2    CORRESP    bakken_corresp.htm, Seq: 1



**PAUL LAW GROUP**
Limited Liability Partnership

Wesley J. Paul
wpaul@paullawgrp.com

902 Broadway, FL 6
New York, NY 10010

T: 646.202.2532 | F: 646.514.6829

Explanatory Note: This amends and supercedes the letter filed with the SEC dated January 15, 2016. The prior letter incorrectly states "5" as the number of unfiled Form 10-Qs. The correct number is "3."

January 20, 2016

H. Roger Schwall
Assistant Director
United States Securities and Exchange Commission
Washington, D.C. 20549

    Re:    Bakken Resources, Inc.

Mr. Schwall:

    We are counsel to Bakken Resources, Inc. ("BKKN," "we," or the "Company").

    On January 12, 2016, BKKN hosted a fourth update call with the U.S. Securities and Exchange Commission ("Staff" or "SEC"). The first three calls took place in 2015 on March 20, June 25, and September 16. BKKN's auditors, MaloneBailey, were present for the June and September 2015 calls. MaloneBailey was invited to this fourth call but made no response to the invitation and did not attend.

    The purpose of this series of calls with the Staff has been to provide ongoing updates about BKKN's internal investigation and to provide an anticipated timeline for BKKN to regain filing compliance under the current Securities Exchange Act of 1934 ("Exchange Act").

    You requested that BKKN prepare and file this letter following the most recent call on January 12, 2016. This letter offers a brief summary of events leading up to the previous call on September 16, 2015 and provides developments since the previous call in more detail. For a more detailed overview of events prior September 16, 2015, refer to BBKN's correspondence letter submitted to the SEC on September 21, 2015.

DG3 Production Team
301267 - Rev 2

Bakken Resources Inc.
CORRESP

01/21/2016 04:01 AM
bakken_corresp.htm, Seq: 2

SEC Correspondence
January 15, 2016
Page 2

### Brief Summary of Past Events and Overview of New Developments

*Brief Summary of Past Events*

Late in 2014, BKKN discovered potentially unauthorized transactions involving a private entity controlled by BKKN's Chairman and Chief Executive Officer ("CEO"), Val M. Holms. BKKN formed an audit committee chaired by previous director W. Edward Nichols to investigate. Mr. Nichols' began his investigation in January 2015 but resigned from BKKN's board on March 12, 2015. He was asked to do so after the Company identified Mr. Nichols' material conflict of interest, which would have precluded BKKN from relying on his investigation report under state law.

BKKN then retained a New York City attorney named Shirley Spira, who has experience investigating corporate fraud, to conduct the investigation. Mr. Holms voluntarily began an indefinite paid leave of absence upon commencement of Ms. Spira's investigation in March 2015.

In April 2015, BKKN announced that its auditors would await the finalized results of and responses to Ms. Spira's investigation before issuing an audit opinion. This put a hold on BKKN's ability to file any periodic report. At the time of the announcement, BKKN's most recent periodic report was on Form 10-Q for the third quarter of 2014, ended September 30, 2014. It is still the most recent periodic report.

*Investigation Developments*

Ms. Spira presented her written report (the "Spira Report") to BKKN's board and its auditors on August 3, 2015. The Spira Report found that Mr. Holms took a $200,000 kickback from a 2011 transaction (the "Duck Lake Transaction"), while Mr. Holms was BKKN's CEO and Chairman. The Company provided Mr. Holms' counsel with a copy of the Spira report on August 4, 2015, and it requested a response, which Mr. Holms provided to the Company through his counsel on September 10, 2015.

Mr. Holms' attorneys advanced, among other things, two major propositions in response to the Spira Report, claiming that the report (1) was missing certain exhibits, and that it (2) mischaracterized the $200,000 payment to Mr. Holms' as a kickback. For the first proposition, Mr. Holms' response pointed out where the Spira Report was missing certain materials and requested them to be provided. For the second proposition, the response cites Mr. Holms' personal, hand-written journal from the 1980s. The response purports that this journal establishes that the $200,000 payment remitted to Mr. Holms in connection with the Duck Lake Transaction was not a kickback at all. Rather, Mr. Holms' relies on this handwritten journal to maintain that the $200,000 amount was actually repayment of a long-standing personal loan to the seller in the Duck Lake Transaction.

| DG3 Production Team | Bakken Resources Inc. | 01/21/2016 04:01 AM |
| 301267 - Rev 2 | CORRESP | bakken_corresp.htm, Seq: 3 |

SEC Correspondence
January 15, 2016
Page 3

Ms. Spira provided the requested materials on August 7, 2015, and the Company permitted Mr. Holms to supplement his original response no later than October 12, 2015. BKKN also permitted Ms. Spira to reply to Mr. Holms' response within 10 days of that date – by October 23, 2015. Mr. Holms did not supplement his response. Ms. Spira provided her reply to Holms' response on October 23.

BKKN's board convened roughly two weeks later for a board meeting on November 11, 2015. The Company's board considered, *inter alia*, all materials and reports to date pertaining to the allegations against Mr. Holms. The board found that Mr. Holms' actions violated his leave of absence agreement, and it found that Mr. Holms should submit his handwritten journal for authentication by an expert in the field of forensic ink dating. The next day, on November 12, 2015, BKKN's counsel informed Mr. Holms' counsel about both of these board determinations.

Mr. Holms disputes violating his leave agreement, and during three months since BKKN first requested Mr. Holms' journal, BKKN's counsel has engaged in several communications with Mr. Holms' counsel about submitting the journal for authentication. Mr. Holms has still not submitted his journal.

On December 10, 2015, the company filed suit in Montana alleging breach of Holms' leave of absence agreement. Since filing, the Company has been escrowing each of Holms' salary payments and expects to continue doing so until the case is resolved.

The latest update on the investigation is that the Company retained a forensic accounting firm to review the Company's books and transactions since 2011. This engagement was a recommendation in the original Spira report. The investigation potentially impacts certain litigation, and there is a mediation and settlement conference scheduled for all parties to those litigations in late January 2016.

*Exchange Act Compliance Developments*

BKKN informed Staff during the previous update call on September 16, 2015 that it intended to become current in its filings by the end of the 2015 calendar year. The Company provided MaloneBailey, its auditor since 2011, with BKKN's Forms 10-K for fiscal years 2013 and 2014 on November 13 and 15, 2015, respectively. The Company then provided MaloneBailey with all three unfiled Forms 10-Q shortly afterward. BKKN still awaits comments from its auditors on all five of these periodic reports.

We understand that the auditors are internally assessing how to proceed, though MaloneBailey has not indicated whether it has reviewed or will review the reports. MaloneBailey was invited to attend this most recent call with Staff, but BKKN did not receive a response. December 15, 2015 marks the last date MaloneBailey responded a communication from the Company.

SEC Correspondence
January 15, 2016
Page 4

   BKKN announced on two Forms 8-K, filed November 12 and 25, 2015, that it appointed three new directors. Two are independent, and both serve on the Company's audit committee.

   Finally, the Company is considering filing unaudited financials, as well as a related narrative disclosure, on multiple Forms 8-K in order to provide the public with certain financial data until it obtains auditor approval to file the outstanding reports. BKKN intends to submit drafts of any such Form 8-K to MaloneBailey for review and comment, though the Company may proceed without auditor input if MaloneBailey does not provide a timely response.

   We are happy to discuss any questions the Staff may have.

                                    Sincerely,


                                    /s/ Wesley J. Paul
                                    Wesley J. Paul

**Submission Data File**

| General Information | |
| --- | --- |
| Form Type* | CORRESP |
| Contact Name | |
| Contact Phone | |
| Filer CIK* | 0001450390 (BAKKEN RESOURCES INC) |
| Filer CCC* | vk9yq$dn |
| Notify via Website only | No |
| Return Copy | No |
| (End General Information) | |

| Document Information | |
| --- | --- |
| File Count* | 2 |
| Document Name 1* | bakken_corresp.htm |
| Document Type 1* | CORRESP |
| Document Description 1 | Correspondence |
| Document Name 2* | bakken_correspx1x1.jpg |
| Document Type 2* | GRAPHIC |
| Document Description 2 | Graphic |
| (End Document Information) | |

| Notifications | |
| --- | --- |
| Notify via Website only | No |
| E-mail 1 | manila.production@dg3.com |
| (End Notifications) | |

EXHIBIT

13

tabbies

DG3 Production Team
307317 - Rev 2

Bakken Resources Inc.
CORRESP

05/17/2016 12:28 AM
bakken_corresp.htm, Seq: 1



PAUL LAW GROUP
Limited Liability Partnership

Wesley J. Paul
wpaul@paullawgrp.com

902 Broadway, FL 6
New York, NY 10010

T: 646.202.2532 | F: 646.514.6829

May 16, 2016

H. Roger Schwall
Assistant Director
United States Securities and Exchange Commission
Washington, D.C. 20549

Re:    Bakken Resources, Inc.

Mr. Schwall:

We are counsel to Bakken Resources, Inc. ("BKKN," "we," "our," or the "Company").

On May 10, 2016, BKKN hosted a fifth update call with the U.S. Securities and Exchange Commission ("Staff" or "SEC"). The first four calls took place on January 12, 2016, and in 2015, on March 20, June 25, and September 16. BKKN's former auditors, MaloneBailey, were present for the June and September 2015 calls. MaloneBailey was invited to the fourth call on January 20, 2016 but did not attend. Our new auditors, DeCoria, Maichel & Teague, attended this most recent Staff call on May 10, 2016.

The purpose of this series of calls with the Staff has been to provide ongoing updates about BKKN's internal investigation and to provide an anticipated timeline for BKKN to regain filing compliance under the current Securities Exchange Act of 1934 ("Exchange Act").

You requested that BKKN prepare and file this Correspondence letter following our most recent call on May 10, 2016. This letter offers a brief summary of events leading up to the previous call on January 12, 2016 and provides developments since the previous call in more detail. For a more detailed overview of events prior January 12, 2016, refer to BBKN's Correspondence letter submitted to the SEC on January 20, 2016.

| DG3 Production Team<br>307317 - Rev 2 | Bakken Resources Inc.<br>CORRESP | 05/17/2016 12:28 AM<br>bakken_corresp.htm, Seq: 2 |
|---|---|---|

SEC Correspondence
May 16, 2016
Page 2

### Brief Summary of Past Events

Late in 2014, BKKN discovered potentially unauthorized transactions involving a private entity controlled by BKKN's Chairman and Chief Executive Officer ("CEO"), Val M. Holms. BKKN formed an audit committee chaired by former director so. Edward Nichols to investigate. Mr. Nichols' began his investigation in January 2015 but resigned from BKKN's Board of Directors ("Board") on March 12, 2015 after BKKN discovered a material conflict of interest that would have precluded the Company from relying upon his investigation report.

BKKN then retained a new investigator, and Mr. Holms voluntarily began an indefinite paid leave of absence in March 2015. Around April of 2015, BKKN stopped receiving communications from its auditors without much explanation. BKKN's reporting status has since fallen into delinquency, and we have been working toward regaining filing compliance.

### Overview of Development Since Our Last Staff Call

On May 10, 2016, we hosted a fifth update call with your Staff that touched upon three topics regarding our filing compliance under the Exchange Act: (1) General Updates, (2) New Auditors, and (3) Status of the Internal Investigation. We provide a summary below of those three things.

#### *General Updates Since the Previous Call*

During the Company's previous SEC call on January 20, 2016, we indicated that the Company was considering whether to file unaudited financials and certain narrative disclosures for the first two quarters of fiscal year 2015. The Company did so. BKKN filed on February 10, 2016 two Forms 8-K with press releases containing quarterly disclosures for the first and second quarters of 2015, ended June 30 and September 30, respectively. The Company also announced certain bylaw amendments on February 16, 2016, primarily to approve Board staggering. On April 22, 2016, BKKN replaced its auditors, MaloneBailey.

While these matters developed, the Company had been actively seeking new acquisition opportunities and identified a number of prospective acquisitions. We announced on May 9, 2016 by press release attached to a Form 8-K that we entered into a term sheet for a loan meant to facilitate those acquisitions. The loan will initially provide a One Million dollar ($1,000,000) credit line facility through a New York-based private equity firm, who will open an additional Ten Million dollar ($10,000,000) facility upon execution of a second financing agreement. The closing of the first One Million dollar ($1,000,000) credit facility was announced last week, on May 11, 2016, in a Current Report on Form 8-K.

SEC Correspondence
May 16, 2016
Page 3

*New Auditors Retained and Making Progress*

Since the last call, the Company had also been searching for a new auditor because of the delays caused by the non-responsiveness of MaloneBailey and its audit partner, Jay Norris. MaloneBailey failed to respond to our invitations to attend the last update call with Staff on January 12, 2016. This lack of communication persisted for months and continued after our January 12, 2016 SEC call. Jay Norris was MaloneBailey's audit partner assigned to BKKN. Shortly after switching auditors on April 22, 2016, BKKN learned that the SEC had formally issued sanctions against both Mr. Norris and MaloneBailey. Our new auditors of the Washington-based firm DeCoria, Maichel & Teague ("DM-T") are now working with MaloneBailey on transition matters. DM-T is also working with our audit committee to arrange for the audits and reviews necessary to regain Exchange Act compliance, and we may solicit the Staff's guidance in that respect.

Our goal at this time is to regain compliance by the end of summer. Jeffrey R. Maichel, our new audit partner with DM-T, noted during this most recent call that DM-T is a PCAOB auditing firm based in Spokane, Washington. DM-T's partners were trained at well-established auditing firms, and Mr. Maichel has more than 25 years of experience as an auditor of public companies. Both he and DM-T have been in good standing as auditors for a long time, receiving no negative PCAOB comments about audit deficiencies for more than six years now.

DM-T agreed to engage BKKN after completing its customary diligence of the Company, and DM-T is now completing the process of transitioning all audit materials from MaloneBailey to DM-T's offices under applicable rules. Mr. Maichel noted during this most recent call that, during the transition process with MaloneBailey, DM-T's communications suggested that a significant reason BKKN stopped receiving communications from MaloneBailey was in fact due to the SEC's then-pending sanctions proceedings against both Mr. Norris and MaloneBailey. *See In re MaloneBailey, LLP*, Admin. Proc. File No. 3-17240 (May 2, 2016). DM-T's communications also confirmed that MaloneBailey was aware of no BKKN-related frauds other than what the Company's investigative reports revealed. Mr. Maichel expressed confidence that DM-T can successfully audit and review BKKN's financial statements so that it may return to full Exchange Act compliance.

*Status of the Internal Investigation*

On May 6, 2016, the Board held its planned in-person meeting and made certain determinations stemming from the internal investigation. BKKN's Board reviewed in-person the investigation's relevant history: The Company retained New York-based fraud investigations attorney Shirley M. Spira to investigate our CEO's, Mr. Holms', potential wrong-doing. Mr. Holms executed a March 24, 2015 leave of absence agreement ("LOAA") and on the same day began his indefinite leave of absence pending the investigation. Ms. Spira presented her initial report to the Company and Mr. Holms in August of 2015. Mr. Holms responded in September of 2015, and Ms. Spira replied in October of 2015. BKKN took up the Spira Report's recommendation to retain a forensic accounting firm, which issued a report in March of 2015 confirming that fraudulent activity did not extend beyond the internal investigation's scope. The board met by phone and resolved to meet in person in order to consider the extensive materials that had accumulated during the internal investigation process. Our Board's in-person meeting took place last week, on May 5 and 6, 2016, and was unanimous in its findings.[1]

| DG3 Production Team<br>307317 - Rev 2 | Bakken Resources Inc.<br>CORRESP | 05/17/2016 12:28 AM<br>bakken_corresp.htm, Seq: 4 |
|---|---|---|

SEC Correspondence
May 16, 2016
Page 4

The Board made four conclusions regarding Mr. Holms.

1.  He received a kickback payment in 2011 totaling $200,000 of the $250,000 that the Company paid in connection with the so-called "Duck Lake Transaction." We first disclosed the Duck Lake Transaction with the SEC in a September 27, 2011 Current Report on Form 8-K.

2.  He executed the so-called "Big Willow Lease" without proper authority. The Lease contemplated bonus payments of $675,000, which the Company has paid in full. We first disclosed the Big Willow Lease with the SEC in a July 15, 2014 Current Report on Form 8-K.

3.  He knowingly provided our auditors with false information in March of 2011 about non-existent $30,000 transaction in Texas.

4.  He breached his LOAA on numerous occasions. The breaches' nature relates to Mr. Holms' stated intentions to terminate the internal investigation against him, and also in part to confidential communications. The communications stem from a pending derivative litigation filed by Manuel Graiwer and T.J. Jesky in Reno, Nevada, and so cannot be fully disclosed at this time.[2]

As a result, the Company terminated Mr. Holms as CEO, effective as of May 6, 2016, under the for "Cause" provisions of his Employment Agreement. We filed a Current Report on Form 8-K announcing the termination last week, on May 11, 2016.

We anticipate that the internal investigation may produce additional materials. As a result, it remains on-going, and Mr. Holms' LOAA continues to apply to him as Chairman. BKKN also continues to treat internal investigation reports as confidential. We fully intend to cooperate with any regulatory or law enforcement investigation that may result.

We are happy to discuss any questions the Staff may have.

Sincerely,

/s/ Wesley J. Paul
Wesley J. Paul

---

[1] Our Board currently consists of seven (7) members (one of whom is Mr. Holms who is currently on leave).

[2] The Company has, however, filed a lawsuit in Helena, Montana against Mr. Holms based on his LOAA breaches and is evaluating an amendment to the lawsuit that would include additional facts and claims.