## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

BAKKEN RESOURCES, INC.

*Plaintiff*,                                        Civil Action No. 1:15-cv-08686 ALC

v.

JOSEPH R. EDINGTON, et. al.

*Defendants*

---

## DEFENDANTS' MEMORANDUM
## IN SUPPORT OF MOTION FOR STAY

---

### I – BACKGROUND

1.      The Defendants, Joseph Edington, Jerod Edington, IWJ Consulting Group LLC, American Cordillera Mining Corporation, Marycliff Investment Corporation and Triax Capital Management Inc. ("Defendants"), through their undersigned attorney submit this Motion and Memorandum in Support of their application for a Stay of these proceedings for the reasons set forth below.

2.      Brought in the name of a Montana company which leases out shale oil producing property, Bakken Resources Inc. ("Bakken"), this Racketeering Influence and Corrupt Practices Act ("RICO") action is being pursued by a Board of Directors (the "Anderson BOD") and an outside counsel Wesley J. Paul and the Paul Law Group. The Anderson BOD and Mr. Paul were divested of their legal authority on July 20, 2016 by a vote of a majority of Bakken shareholders. The new Board of Directors (the "Holms BOD") will not prosecute this action.

1

3.      Because the Anderson BOD refuses to acknowledge the authority of the lawful Bakken shareholder vote dismissing it and empowering the Holms BOD, the ultimate resolution of the proxy fight over control of the Plaintiff company is taking place in State courts in Nevada and Montana (the "Underlying Shareholder Actions"). The resolution is eminent and rests on the Montana Court confirming the preliminary finding that the Anderson BOD is relying on a highly dubious if not fraudulent "poison pill" transaction that sought to transfer control of Bakken to a party affiliated with Plaintiff's counsel Mr. Paul. The loan of a few hundred thousand dollars, in light of Bakken's revenue and assets, served no valid beneficial business purpose. The loan amounted to a minute percentage of the value of Bakken's revenue and assets.

4.      After granting the Holms BOD group preliminary relief, the Montana Court, Judge Reynolds, took the matter of the validity of that transaction and the lawful control of Bakken under submission after the Court's Preliminary Injunction of January 19, 2017.  Since the Holms BOD has already indicated that it will not pursue the case once the Court confirms the divesture of Mr. Paul's and the Anderson BOD authority, a Stay pending that determination is most appropriate.

## II – LEGAL STANDARD

5.      "A District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-707 (1997) (citation omitted); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). A court's inherent power to stay should be exercised in such a manner as to "conserve scarce judicial resources and

promote the efficient and comprehensive disposition of cases." *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 664 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999).

## III – DISCUSSION

6.     A dispute over the governance, control and hence the legal representation and strategies of Plaintiff Bakken is pending in proceedings outside of the purview of this Court. The outcome will determine the status of counsel Wesley J. Paul and whether Bakken will continue to litigate this case or not.

7.     The contest between the Bakken shareholders and the Anderson BOD was triggered on May 3, 2016 when, at the direction of the Anderson BOD and its counsel Mr. Paul, Bakken entered into a finance transaction with Eagle Private Equity ("Eagle") that included toxic provisions that manifestly and unfairly benefit Eagle and the Anderson BOD at the expense of the Bakken shareholders. (Exhibit A – May *17, 2016 Nevada CV 16-01086 – Val Holms v Bakken – Complaint* ¶'s 20-21, pp. 5-6).

8.     The Bakken – Eagle transaction is the gravamen of litigation in the State of Nevada. (Exhibit A), wherein, on May 24, 2016, the Anderson BOD was granted a preliminary injunction against former president and CEO Val Holms, now deceased. (Exhibit B - *May 24, 2016 Nevada CV 16-01086 - Val Holms v Bakken - Preliminary Injunction Granted*). The May 24, 2016 preliminary injunction against Val Holms in Nevada preceded the Montana shareholder action over control of the Bakken (detailed *infra* investing the Holms BOD with power and authority) by two months and did not involve the then non-existent Holms BOD who claims current control of Bakken and disavows the claims in this law suit.

9.     The Eagle transaction was structured as a loan convertible into newly declared preferred stock with super voting rights (100 votes/share).  Bakken's other stock holders held

common stock (1 vote/share). In Despite Bakken's lack of need of a financing deal, let alone for one with such a rare and Draconian provision, for no appropriate reason, instead of being convertible into shares of Bakken at the market price, or some other metric tied to the value of Bakken, Eagle could convert its loan into a controlling interest in Bakken. This unfair and toxic "poison pill" provision in no way benefitted Bakken or its shareholders. It meant that Eagle could gain a controlling interest in Bakken, whose assets exceeded $5,600,000.00 and $4,000,000.00 in cash and investments, by lending it 6.25% of that amount or $600,000.00. Shockingly, the Eagle provisions granted it the right to convert its loan into the newly declared Bakken preferred stock which no other shareholder had been or could be issued. Issuable to Eagle only, each share of preferred stock had the voting power of 100 shares of the then issued and held Bakken common stock. Considering the timing and effect, the stifling of the shareholders and their newly elected BOD, the outrageous terms were transparently drafted to overcome any democratic attempt by the true Bakken Shareholders to control their Company. Most tellingly, this conversion to greater voting preferred stock would take effect if the Anderson BOD was ever replaced, thereby allowing Eagle to put it back in power perpetually.

10.    In drafting the deal in this manner, its negotiators, that not surprisingly included Mr. Paul acting ostensibly "on behalf" of Bakken, structured the transaction with the evident intent to create a "poison pill" for shareholders and an impervious shield for the Anderson BOD. Simple arithmetic reveals the utter impropriety of the terms: Eagle would own 51.4% of Bakken for a loan of $600,000.00 which served no business purpose other than to create a debt that could deprive shareholders of their interest and control of Bakken. (Exhibit C - December 12, 2016 MT DDV 2016-612 - *Memo Holms Board and Expert Opinion Prof Dan Morrissey* - C2 pp. 3-4). This math lays bare the true reason for the deal, that being, an unlawful attempt to insulate Mr.

Paul and the Anderson BOD from the will of the controlling group of Bakken shareholders that voted to replace it with the Holms BOD. The Holms BOD would, inter alia, dismiss this case and fire Mr. Paul, who is of course personally benefitting from this highly dubious civil RICO action by billing Bakken substantial amounts to litigate it.

11.     Eagle and the Anderson BOD claimed that the Eagle transaction was a proper exercise of "business judgment" in the best interest of Bakken, providing supposedly needed capital. When the Bakken shareholders objected and voted out the Anderson BOD, the Anderson BOD sought to protect itself by stating that the shareholder action triggered the clause that would transfer control to Eagle at the expense of the Bakken shareholders. The Anderson BOD also claimed that the July 20, 2016 shareholder action was improperly conducted, and even if properly conducted, the shareholder action and election of the Holms BOD had given Eagle a controlling interest in Bakken. Under this warped version of reality, Eagle could hold a shareholder meeting all by itself. Eagle's 51.4% voting shares could displace the Holms BOD, negate all its actions, and reelect the Anderson BOD. This scenario utterly frustrates the proper administration of corporate law and reveals the impropriety of the Eagle transaction and the Anderson BOD, as well as Mr. Paul's improper self-interested motives. Of course, this attempt at a fail-safe Catch-22 is patently illegal under all principles of corporate law as the Nevada Court indicated when it characterized the Eagle deal as a "sham."

12.     Before he died, Val Holms went on record claiming that the Eagle transaction was a fraudulent scam imposing upon the shareholders the choice of (1) allowing the Anderson BOD lifetime control of Bakken or (2) giving Eagle 51.4% ownership and control. Further, that granting Eagle a right to gain a 51.4% ownership and controlling interest in Bakken's $9,600,000.00 in assets and cash for $600,000.00, if the Anderson BOD was replaced, was an

obvious poison pill gambit blatantly contrary to the Anderson BOD's fiduciary responsibilities and not in the best interest of Bakken and its shareholders. Exhibit A – May *17, 2016 Nevada CV 16-01086 – Val Holms v Bakken – Complaint* ¶'s 23-24, p. 8).

13.     July 22, 2017, the Nevada Court granted the Anderson BOD a second TRO pending a hearing on September 21, 2016. (Exhibit D - *July 22, 2016 Nevada CV 16-01086 - Val Holms v Bakken – TRO*).   After a series of hearings, the Nevada Court, Judge Flanagan, set the matter for trial April 2017 and extended the existing TRO's. (Exhibit F - *November 1, 2016 Nevada CV 16-01086 Order Extending TRO*). Per Plaintiff's counsel, the trial date has been continued to October 2017. (Exhibit E - *April 12, 2017 Doc 66 - Paul Status Conference Letter, ¶17, p.3*).

14.     While this Court was considering *Defendants' Motion to Disqualify Counsel Wesley J. Paul*, on July 20, 2016, a majority of Bakken shareholders took a number of actions by written consent. Among the actions taken were: termination of all members of the Bakken Board of Directors (Anderson BOD) and corporate officers; election of a new Board of Directors (Holms BOD) and corporate officers; termination of Wesley J. Paul and Paul Law Group as corporate counsel; and placing a "litigation hold" on all lawsuits in which Bakken was involved. (Exhibit G – July *21, 2016 MT CDV 2016-611 - Bakken (Holms Board) v Paul et.al. - Complaint and Jury Demand* ¶'s 19-24, pp. 4-6).

15.     The Anderson BOD and Mr. Paul refused to accept the shareholder action and relinquish authority. The duly elected Holms BOD also sought restraints and injunctive relief in Montana State Court. (Exhibit G)

16.     The Anderson BOD has also sought restraints and injunctive relief in Montana State Court. (Exhibit H – *July 21, 2016 MT DDV 2016-612 - Bakken (Anderson Board) v. Holms*

*- Complaint and Application for TRO and Injunctive Relief*). CDV 2016-611 and DDV 2016-612 were consolidated for adjudication.   After a series of hearings and supported by (Exhibit C - December 12, 2016 MT DDV 2016-612 - *Memo Holms Board and Expert Opinion Prof Dan Morrissey*), the Montana Court, Judge Reynolds, granted the Holms BOD a preliminary injunction which is currently in effect pending a final judgment. (Exhibit I - *January 9, 2017 MT DDV 2016-612 Order Granting Bakken (Holms Board) Preliminary Injunction*). As such, Mr. Paul and Bakken are prosecuting this case in direct contravention of that Order and the explicit direction of the Bakken shareholders.

17.    In granting the Holms BOD a preliminary injunction (Exhibit I), the Montana Court did not defer to the Nevada Court. And Judge Reynolds did not agree that the Nevada Court's rulings favored the Anderson BOD. According to Judge Reynolds, and in direct contradiction of the position advanced by Plaintiff's counsel in this case:

> "At the [Montana] 12/12/2016 hearing, [Bakken] offered no evidence in contradiction to the TRO ruling. It merely deferred to decisions of the Nevada court some made preliminarily and to be made tentatively in the spring. This Court is aware that rulings in Nevada have varied. For example, one court found Eagle Equity transaction was a sham and another that it was an exercise in business judgment. Based upon the lack of any factual presentation from [Bakken]  per the TRO, this Court grants Defendants and Third Party Plaintiffs (Allan Holms et.al.) a preliminary injunction on precisely those issues addressed within the October 19, 2016 TRO. Further, with respect to the efforts Allan Holms, Todd Jensen, and Allen Collins to take control of the Board of Directors, it is necessary in this Court's view that we have an evidentiary hearing on this precise issue to determine if those efforts were proper/lawful/and ought to be approved by this Court."
> (Exhibit I - *January 9, 2017, Preliminary Injunction* p.2).

19.    Per the July 20, 2016 Holms BOD resolutions (Exhibit G ¶'s 19-24, pp. 4-6), The Holms BOD stated and gave notice of the termination of Mr. Paul effective July 20, 2016 and

stated the intent to review and resolve Bakken litigations. The July 20, 2016 resolutions will be enforced if the Holms BOD prevails.

20.     The judgments in the State Court actions in Nevada and Montana will determine the governance of Bakken. The governance of Bakken will determine further representation by Mr. Paul and Bakken's choice to continue or end prosecuting this case. Those decisions are pending. And under the currently controlling Montana ruling (Exhibit I), Plaintiff and its counsel lack the authority to proceed with this case.

<u>IV - SUMMARY</u>

21.     The issue of who governs Bakken is not before this Court. But its resolution will determine whether or not this case will survive and advance. This Court is tasked with resolving the question of whether to briefly delay these proceedings until it is determined which Board of Directors runs the Plaintiff corporation in whose name this case was brought. This Court has broad discretion to determine scheduling in a manner that best serves the Court and the litigants. With the answer to this dispositive issue pending in another forum, a stay would preclude the waste of resources of this Court.

22.     Under the controlling legal principles and standards, the question before this Court is whether a stay will: prejudice any litigant; hinder the non-moving Party's pursuit of its case; impose needless expense; and be the most equitable, fair and efficient use of Court resources. It is difficult to discern what possible prejudice to the Plaintiff's case may result from a delay in the proceedings herein. It is equally difficult to discern how the Plaintiff would be damaged by avoiding addition fees to Mr. Paul and Paul Law Group. A stay of proceedings requires no expense generating activities. To the contrary, awaiting the outcome the State Court actions is the logically prudent approach. A stay: avoids any implication that the Anderson BOD or the

Holms BOD should prevail; will avoid further perhaps valueless proceedings herein; promote judicial efficiency; conserve scarce judicial resources; and not impose needless expense upon any litigant. (*Landis* @ 254). Manifestly, the only party benefiting from this action going forward at this time is Mr. Paul.

23.    If this proceeding is not stayed pending the decision as to who runs Bakken, the Plaintiff (Anderson BOD with Mr. Paul as counsel) may use this Court's decision to further their position in the State Court proceedings. Denial of a stay may be presented as evidence that a Federal Court acknowledges and accepts the authority of the Anderson BOD and Mr. Paul to act on behalf of Bakken.

24.    Notably, it is not uncommon for litigants awaiting the outcome of potentially dispositive proceedings elsewhere to agree to wait and see, that is stipulate to a stay. The Anderson BOD and Mr. Paul, all of whom may be ousted, have voiced the intent to rigorously oppose this motion. The difference here as to the corporate Plaintiff is that no member of the Anderson BOD or corporate officer has or will personally incur a cent of the legal fees or other expenses in this case. Remarkably, Mr. Paul and members of Paul Law Group in opposition are the only individuals who will profit from a denial of stay, regardless of the State Court outcome. Neither this Court, nor these Defendants have any such currently captive deep pocket to cover the needless and considerable cost of a Federal case.

## V – RELIEF REQUESTED

25.    For the reasons stated above, and in the interest of equity, judicial economy and the efficient resolution of actual disputes, this Court should stay proceedings herein pending resolution of the State Court proceedings that will determine which Board controls the Plaintiff

and whether it will pursue this action any further, or as anticipated move to dismiss it with prejudice on consent of all parties to this action.

This 4th of May, 2017                                        Submitted by:

                                                                            Michael Strage
                                                                            _____
                                                                            Michael Strage
                                                                            Law Office of Michael Strage
                                                                            425 Madison Avenue, Suite 902
                                                                            New York N.Y. 10017
                                                                            (646) 642-0701
                                                                            michaelstrageesq@gmail.com
                                                                            Attorney for Defendants