# EXHIBIT B

May 24, 2016, Nevada CV 16-01086 - Val Holms v Bakken - Preliminary Injunction Granted

FILED
Electronically
CV16-01086
2016-05-24 11:22:00 AM
Jacqueline Bryant
Clerk of the Court
Transaction # 5529813

IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF WASHOE

VAL HOLMS, an individual,

    Plaintiff,

vs.

BAKKEN RESOURCES, INC., a Nevada corporation, DAN ANDERSON, an individual, KAREN MIDTLYNG, an individual, HERMAN R. LANDEIS, an individual, BILL M. BABER, an individual, SOLANGE CHARAS, an individual, DOUGLAS L. WILLIAMS,

    Defendants.

Case No. CV16-01086

Dept. No. B9

### ORDER GRANTING PRELIMINARY INJUNCTION

THIS MATTER is before the Court on Plaintiff Val Holms's ("Holms") *Ex Parte* Motion for a Temporary Restraining Order against Defendants Bakken Resources, Inc. ("BRI") and individual Defendants Dan Anderson, Karen Midtlyng, Herman R. Landeis, Bill M. Baber, Solange Charas, and Douglas L. Williams (the "Board of Directors), and the Court, having reviewed the Motion and Memorandum of Points and Authorities, the Verified Complaint, and otherwise being fully informed in the premises, hereby orders that the Motion is **GRANTED** and the following Temporary Restraining Order is hereby **ENTERED** against BRI and the Board of Directors to preserve the status quo and prevent immediate and irreparable harm to Holms.

I.    **FINDINGS OF FACT AND PROCEDURAL BACKGROUND**

This matter arises out of Holms's efforts to settle a companion lawsuit pending before the Second Judicial District Court in and for the County of Washoe, Nevada, Civil Case No.

1

CV14 00544, Dept. No. B7, styled *Manuel Graiwer et al. v. Val Holms, et al.* (the "Derivative Action") pending before Judge Patrick Flanagan. On February 17, 2016, after two previous mediation attempts in November 2015, and January 2016, Derivative Plaintiffs and Holms reached a settlement of the Derivative Action. On February 29, 2016, Holms notified the Court and the other defendants in the Derivative Action that he and Derivative Plaintiffs had reached a full and complete settlement of the lawsuit as between them and provided the general terms of the settlement including, *inter alia*, that Holms shall sell all of his BRI stock to Derivative Plaintiff Graiwer. Holms is the current owner of 26,235,000 shares of BRI stock, which comprises the single largest stock ownership of BRI, approximately 47% of the outstanding BRI stock. On May 9, 2016, Holms filed a motion for court approval of the settlement agreement between the Derivative Plaintiffs and Holms (the "Derivative Settlement Agreement").

Between the November 2015 mediation between Derivative Plaintiffs and Holms and May 9, 2016, when Holms filed the Derivative Settlement Agreement for Court approval, Defendants herein, BRI and the Board of Directors, engaged in the following acts: (1) on December 10, 2015, the Board of Directors caused BRI to file a complaint in the First Judicial District Court, Lewis & Clark County, State of Montana, to enjoin Holms from voting his BRI shares in any manner that would replace the Board of Directors; (2) on February 9, 2016, the Board of Directors purported to amend the BRI Bylaws by allowing for a staggered board so that a majority of the Board could not be replaced in a given year and by removing the shareholders' right to adopt, amend, or repeal any Board changes to the BRI Bylaws; (3) on or about May 3, 2016, the Board of Directors caused BRI to enter into a credit agreement with Eagle Private Equity ("Eagle") whereby in the event BRI draws on the line of credit, the loan would be secured by newly created preferred class A shares, each with voting power of 100 common shares, convertible at Eagle's election to common shares if there is a sale of Holms's shares in BRI that would result in a change of control of the company. The effect of the Eagle loan agreement is that upon a sale of Holms's shares to Derivative Plaintiff Graiwer, his shares would be diluted from 47% of outstanding BRI stock to only 21%, as confirmed by BRI's

1  corporate counsel in his Opposition to Plaintiffs' Motion for Continuance filed in the
2  Derivative Action.
3        There is little or no market for Holms's BRI stock as BRI shares are not traded through
4  an electronic system and over the last three months, BRI trading has averaged 15,000 shares
5  per day. At that rate, it would take Holms nearly five (5) years to sell all of his stock. Thus, the
6  stock sale to Graiwer is a unique opportunity for Holms's to divest himself of his BRI stock and
7  to extricate himself from the Derivative Action.
8      II.    **ANALYSIS**
9        Injunctive relief is appropriate to preserve the status quo when (1) the plaintiff enjoys
10 a reasonable probability of success on the merits of its claims and (2) defendant's conduct, if
11 allowed to continue, would result in irreparable harm, for which compensatory damages are
12 an inadequate remedy. *See Number One Rent-A-Car v. Ramada Inns*, 94 Nev. 779, 780-81,
13 587 P.2d 1329, 1330 (1978).
14       Here, Holms's Verified Complaint asserts claims for breach of fiduciary duty against the
15 Board of Directors and intentional interference with contract against BRI and the Board of
16 Directors. Holms has demonstrated a reasonable probability of success on the merits of his
17 breach of fiduciary duty claim because the Board of Directors owe Holms, as a shareholder, a
18 duty to maintain, in good faith, the corporation's and its shareholders' best interests over
19 their own. *In re Amerco Derivative Litig.*, 127 Nev. Adv. Op. 17, 252 P.3d 681, 700-01 (2011).
20 The evidence suggests that the Board of Directors have breached their duties by seeking to
21 enjoin Holms from voting his shares in any manner that would result in a change of the Board,
22 purporting to amend the Bylaws to remove the shareholders right to adopt, amend, or repeal
23 any of the Board's changes to the Bylaws, and by entering into the Eagle Private Equity loan
24 agreement which, if drawn upon, will unreasonably dilute the power and voting rights of the
25 existing BRI shareholders including Holms and create an unreasonable restraint on the
26 alienation of Holms's BRI stock.
27       Holms has also demonstrated a reasonable probability of success on the merits of his
28 intentional interference with contract claim because the evidence suggests that BRI and the

1   Board of Directors entered into the Eagle loan agreement with knowledge of the Derivative
2   Settlement Agreement and that it provided for the sale of Holms's shares to Derivative
3   Plaintiff Graiwer, that BRI and the Board of Directors entered into the Eagle loan agreement
4   with the intent and design to disrupt the Derivative Settlement Agreement and the sale of
5   Holms's stock to Graiwer, which if disrupted, will cause Holms damages not less than
6   $4,197,000.00. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274, 71 P.3d 1264, 1267 (2003).

7       Holms has further demonstrated that if Defendants cause the Eagle line of credit to be
8   drawn upon, Holms will suffer immediate and irreparable harm. Because there is little to no
9   active market for BRI stock, much less more than 26 million shares, the stock sale as provided
10  in the Derivative Settlement Agreement is a unique opportunity for Holms to divest himself of
11  his BRI stock and extricate himself from the Derivative Action. If BRI draws on the Eagle line of
12  credit, Defendants would thwart that unique opportunity, deprive Holms of his shareholder
13  voting rights and power, and create an unreasonable restriction on the alienation of his BRI
14  shares. Accordingly, the Court concludes that the status quo should be preserved until this
15  matter is adjudicated on the merits or the Derivative Settlement Agreement is approved by
16  the Court.

17      The Court finds that Holms's reasons supporting why notice to Defendants of the
18  Verified Complaint and Motion should not be required are reasonable and supported by
19  Defendants' conduct in opposition to Holms's efforts to settle the Derivative Action; more
20  particularly, the evidence suggests that notice would have caused Defendants to immediately
21  draw on the Eagle line of credit thereby causing actual irreparable harm to Holms. For these
22  reasons, this temporary restraining order was granted without notice to Defendants.

23      The Court finds that there is no harm to Defendants by entering temporary injunctive
24  relief and preventing Defendants from drawing on the Eagle line of credit. A bond in a
25  preliminary injunction action serves to allow an enjoined party to recover if the injunction is
26  improperly issued. NRCP 65(c). Therefore, Holms is ordered to post a nominal bond of $1
27  within ten (10) days of entry of this order.
28  ///

**IT IS HEREBY ORDERED THAT:**

1. Defendants are enjoined and restrained, directly or indirectly, and whether alone or in concert with others from: (a) drawing on the Eagle Private Equity line of credit as described in BRI's Forms 8-K and 8-K/A filed on May 9 and 10, 2016, respectively, with the United States Securities and Exchange Commission; and (b) from taking any other action that would dilute the percentage, value, alienability, or impair the voting rights of Holms's shares in BRI or otherwise impair the terms of the sale of stock between Holms and Graiwer as set forth in the Derivative Settlement Agreement filed with the Court on May 9, 2016, in Civil Case No. CV14 00544, Second Judicial District Court in and for the County of Washoe, Nevada.

2. Pursuant to NRCP 65(c), the Court finds that no harm will occur to the Defendants in the event the issuance of this Order is ultimately found to be wrongful. Therefore, Holms shall post nominal security in the amount of $1.

3. This Temporary Restraining Order shall expire on June 21, 2016 at 5:00 p.m., unless within such time, the Order, for good cause, is extended by this Court.

4. A preliminary injunction hearing is set on June 21, 2016 at 10:00 a.m.

DONE this 24 day of May, 2016

BY THE COURT:

_____
District Court Judge

5