MEMO

To: John Doubek, Bil Childress, Allan Holms

From:  Professor Dan Morrissey

Re:  Bakken Resources, Inc.

Subject:  Potential Testimony at Hearing, Dec. 12, 2016

Date: Dec. 9, 2016

1. Actions that determine the rights of shareholders are adjudicated under equitable jurisprudence.  In addition, the petitioners here, the Holms group, are seeking equitable relief by way of a preliminary injunction.

<u>The Paul Group does not have Clean Hands to Claim that Allan Holms Violated SEC Regulations</u>

2. Defendants Paul, Midtlyng, and Anderson (the "Paul Group") do not have "clean hands" to protest any violation of SEC regulations such as the alleged failure of the Holms group to comply with the SEC's rules regarding proxy solicitation.

A. While in control of Bakken, the Paul Group did not cause the Company to file its periodic reports with the SEC as required by Section 12(g) the Securities Exchange Act of 1934 ("Exchange Act").   Chief among those is the annual report on Form 10-K which is required by Exchange Act Rule 13a-11, 17 C.F.R. § 240.13a-11.  Among other things it must contain audited financial statements.  For two years, therefore, there was no reliable public information about the Company's financial situation.  In addition, the Paul Group called no shareholder meeting during that time so its directors became "hold-overs," without any renewed mandate from the shareholders.

B. The Paul Group would like the Court to believe that the SEC condoned these delinquencies because Paul confirmed several phone conversations with an SEC official about them with letters.   However I can testify from my own experience as a lawyer in the SEC's "Delinquent Reports" unit that the SEC would give no such approval to Bakken's delinquencies.

C. To the contrary, Exchange Act Rule 12b-25, 17 C.F.R. § 240.12b-25, provides that if a reporting company cannot file a required periodic report on time it must make a filing to that effect on SEC Form 12b-25. There it must state the reasons for its

1

EXHIBIT

1

delinquency. The Rule then give the company a 15 day grace period to make the filing. After that the company is in violation of its filing requirements.

D. In addition, no inference can be draw from the SEC's failure to take enforcement action against Bakken for its delinquent filings when it was under the control of the Paul Group. The SEC recently stated that it has resources to prosecuted only approximately 1% of the wrongful conduct that occurs under the federal securities laws. Bakken's violation also would be a small objective for the SEC given the wealthy Wall Street community that it must police.

<u>The Proxies Given to Allan Holms were Valid and Allowed him to take Control of Bakken</u>

3. Even if the Court disregards the Paul group's lack of clean hands here, it should nevertheless find that the Holms group has not violated the SEC's proxy solicitation rules. And even if that has occurred, that violation is technical and de minimis. It should therefore not affect the validity of the proxies that Allan Holms voted. That action elected new directors for the Company because it was done in compliance with Nevada Corporate Law.

A. The SEC's proxy rules govern <u>solicitation</u> of proxies. (Emphasis added.) As Allan Holms has testified, he did nothing to request that the proxies he received be given to him.

B. Even if there were solicitations of proxies, the SEC's rules governing those transactions exempt situations where no more than 10 shareholders are solicited. Exchange Act Rule 14a-2(b)(2), 17 C.F.R. § 240.14a-2(b)(2). Here just two of the proxies that Allan Holms received, those from Val Holms and Manuel Graiwer, gave him plenary power to vote more than a majority of the Company's shares.

C. Those two proxies were all that Allan Holms needed to affect the corporate actions he took on July 20, 2016. The other proxies that he received are irrelevant. Any violation of SEC rules as to them is, at most, technical.

D. The other proxies therefore did not impact the validity of the corporate actions undertaken by Allan Holms which were properly done under Nevada corporate law. NRS 78.335(1) (Bylaws § 2.12) allows shareholders to give their proxies in writing to another person who may act for them. In addition NRS 78.320(2) (Bylaws §2.10) provides that a shareholder having a majority of the voting power may take any action by written consent that is permitted at a stockholder meeting.

E.  Since Allan Holms had the written proxies of Val Holms and Manuel Graiwer, he was entitled to vote those shares.  When he therefore tendered a written consent to an appropriate official of Bakken on July 20, 2016 electing himself, Jensen and Collins as the Company's three new directors that was an effective shareholder action just as if it had been taken at a shareholder meeting.   Since the terms of the other Company directors had expired, Allan Holms, Jensen, and Collins then constituted Bakken's board of directors. After that the resolutions they adopted were the legitimate and duly authorized actions of Bakken.

F.  Even if there are violations of the proxy solicitation rules, they are nugatory and de minimis.  The equities of this case are simple and clearly favor the Holms group. The shares voted by Allan Holms represent a majority interest in the Company. The proxies that Allan Holms received came from people who wanted him to be in control of the Company.  Nevada Corporate law states that an entrenched board cannot block the duly authorized actions by shareholders to take control of the Company that they own.  Shoen v. Amerco, 885 F.Supp. 1332 1341 (D. Nev. 1994).

G.  Nevada corporate law also recognizes the paramount right of shareholders to exercise their voting rights and elect directors.  "Any interference with the shareholder franchise is especially serious." Hilton Hotels Corp. v. ITT Corp. 978 F.Supp. 1342, 1351 (D. Nev. 1997).  This would include any of the tactics employed by the Paul Group to frustrate Allan Holm's use of his proxies to elect directors.

<u>The Eagle Transaction does not give it the Right to Control Bakken</u>

4.  The Eagle Transaction is inoperative.

A.  Eagle claims to have made a loan to Bakken.  As a term of that transaction it purports to have the right to convert that loan into preferred shares.  Those then supposedly allow Eagle to have 51% of Bakken's voting stock thus substantially reducing Val Holms's percentage ownership of Bakken's outstanding shares.

B.  The Eagle loan however was a sham.  It allegedly amounted to $600,000 but there is no showing that such funds were ever transferred to Bakken.  In addition, the principal of Eagle, Carl George, has many judgments entered against him.  Such unjustifiable activity, which "dilutes a percentage ownership interest in relation to the interests of other shareholders" has been held to be "actionably coercive" under

Nevada corporate law.  Brown v. Kinross Gold U.S.A., Inc., 531 F.Supp.2d 1234, 1246. (D. Nev. 2008)

C. Even if $600,000 was appropriately received by Bakken, it was grossly disproportionate consideration for what Eagle and the Paul Group now claim is their majority ownership in the Company.  If that is recognized, Eagle now has control of Bakken's assets which are comprised of $5.6 million in current assets and more than $4 million in cash and other investments.  Eagle has gotten control of all that for a fraction of its value. As Dan Anderson, the Company's CFO has acknowledged in testimony, with such power Eagle could dissolve and liquidate Bakken. It could then take 51% of those assets—thus gaining a sum much greater than the $600,000 it paid for its shares.

D. The business judgment rule cannot be invoked to justify the Eagle transaction.  Its clear purpose is to block the Holms shareholders from taking control of the company that they own.  Action such as the Eagle transaction that interferes with the effectiveness of shareholder voting is subject to a standard of review that is more demanding than the business judgment rule.  In such cases the board bears a heavy burden of demonstrating a compelling justification for its action.  Shoen v. Amerco, 885 F.Supp. at 1342,

E. *Shoen* also holds that the board's prerogatives under the business judgment rule must always be qualify by the right of "unhappy shareholders to vote the board out of office." *Id.* at 1340.  Another case decided under Nevada law re-enforces that point holding that any actions that disenfranchise shareholders are not reasonable unless a "compelling justification exists." Hilton Hotels Corp. v. ITT Corp. 978 F.Supp. at 1348.

F. No such justification existed here.  Bakken had no need to borrow $600,000 from Eagle (if such transaction was indeed consummated).  Bakken already had $5.6 million in current assets and more than $4 million in cash and other investments.  The true purpose of the Eagle transaction was to dilute the ownership interest of Val Holms and pirate the Company away from him.

MEMO

To:  Bil Childress (BC), John Doubek (JD)

cc:  Allan Holms (AH)

From:  Dan Morrissey (DM)

Re:  Documents Read

Subject: Bakken Resources Litigation

Date:  Dec. 9, 2016

1.  Memo from Tom Bradley to AH re:  Carl George—July 11, 2016

2.  Material in Binder from AH – received Dec. 2, 2016

Tab 1

    a.  Resolutions of Board signed by AH, Jensen and Collins (5 pages), July _, 2016

    b.  Shareholder Action by Written Consent without a Meeting appointing AH, Jensen and Collins as directors, signed by AH for himself and 18 other shareholders holding 31,505,000 shares.

    c.  Proxies to AH

        V. Holms – July 7, 2016

        S. Graiwer—July 6, 2016

        L. Johnson—July 5, 2016

        K. Graiwer—July 6, 2016

        D. de Lau-McKenzie—July 7, 2016

        B. Gillis—July 6, 2016

        Manuel Graiwer—June 29, 2016

        V. Valdez – July 6, 2016

        Marisa Graiwer—July 6, 2016

        W. Edward—July 5, 2016

T. Walsh (bottom half blank)—no date

G. Prain—July 5, 2016

M. Buttice – July 5, 2016

D. Townshend – July 5, 2016

F. Short—July 7, 2016

K. Jensen—July 10, 2016

P. Schmid—July 5, 2016

A. Graiwer—July 14, 2016

A. Tyrrell—July 12, 2016

D. Underhill—July 5, 2016

W. Edward—July 5, 2016

J. Greenman—July 5, 2016

P. Sobol—July 6, 2016

d. Shareholder Action by Written Consent without a Meeting Electing Successor Directors signed by AH, for Shareholders Tyrrell, Underhill, Brender Services Limited, Greenman, Philip and Debra Sobol Trust—Total Number of Shares Voted 1,680,000—July 20, 2016

e. Letter to R. Greer—Litigation Hold, signed by AH, Jensen and Collins—July 20, 2016

f. Letter to O. Goe—Litigation Hold, signed by AH, Jensen and Collins—July 20, 2016

g. Letter to M. Addison—Litigation Hold, signed by AH, Jensen and Collins—July 20, 2016

h. Letter to P. Anderson—Litigation Hold, signed by AH, Jensen and Collins—July 20, 2016

i. Letter to W. Paul—Terminating his Legal Services, signed by AH, Jensen and Collins—July 20, 2016

Tab 2

      Ex parte motion for TRO including Points and Authorities—NV Court, Graiwer v. Holms—July 21, 2016

Tab 3

      Application for Limited TRO including TRO entered by Judge Reynolds, MT Court, Bakken v. Val Holms, Oct. 19, 2016

Tab 4

      Order Extending TRO and Granting Leave to File Counter-Claim, NV Court, Graiwer v. Holms signed by Judge Flanagan, Nov. 2, 1016 including as Ex. 1 TRO signed by Judge Flanagan on July 22, 2016 prepared by Paul Anderson

Tab 5

      Reply to Oppositions to Motion for Preliminary Injunction, Graiwer v. Holms, NV Court, Sept. 23, 2016

Tab 6

      Memo from BC to AH – Updated Proxy List, Edington List, and Graiwer Group, with additional page listing what appear to be 14 shareholders and their holdings of restricted and unrestricted stock totaling 3,470,000 shares

Tab 7

      Unsigned Declaration by Manny Graiwer dated June 27, 2016 prepared by Sinai law firm

Tab 8

      Memo from J. Collazo to AH dated Aug. 10, 2016 Re: Affidavit of Wesley J. Paul dated Aug. 9, 2016 including Aug. 9, 2016 affidavit of W. Paul to which were attached three letters by W. Paul to H. Roger Schwall, Assistant Director, SEC-- dated Sept. 21, 2015, Jan. 20, 2016 (3 pages of which were dated Jan. 15, 2016), and May 16, 2016.

Tab 9

      a. Memo from J. Edington to AH dated Aug. 5, 2016 including SEC page on Delinquent Filing Program

      b. Memo from J. Edington to Tom Bradley, Aug. 5, 2016 Subject: Fwd. Fairness letter

      c. Memo from J. Edington to Tom Bradley, Aug. 5, 2016 Re: Bakken-Eagle Deal

d. Memo from J. Edington to AH, Aug. 5, 2016 "Advantages of the Exemption"

e. Memo from J. Edington to AH, Aug. 5, 2016 at 11:53 AM

f. Memo from J. Edington to AH, Aug. 5, 2016 at 11:41 AM including attachment from TAI re: Exempt Proxy Solicitations

g. Memo from J. Edington to AH, Aug. 5, 2016 Subject: Exemption—Rule 14a-2(b)(2)

h. Memo from J. Edington to AH, Aug. 5, 2016 Fwd: finra

i. Memo from Jerod Edington to Joseph Edington and AH Aug. 5, 2016 Re: Form 4 Filings including various material from "Legal and Compliance LLC" on 13D and 13G filing

j. Form 10-Q for Bakken filed Dec. 12, 2014

Tab 10

a. Bakken Brief in Support of Motion to Stay Proceedings, MT Court, Nov. 30, 2016

b. Complaint, Graiwer v. Val Holms, NV Ct., Mar. 13, 2014

c. Complaint, Val Homs v. Bakken, NV Ct. May 17, 2016

d. Case Summary for Graiwer v. Val Homs

e. Defendants' Opposition to PL. Val Homs' Ex Part Motion for TRO etc. June 20, 2016

f. Transcript of proceedings on Aug. 9, 2016 before Judge Reyolds, Bakken v. Holms, MT Court

g. Order Extending TRO etc. Graiwer v. Holms, NV Court, Nov. 1, 2016

h. TRO Graiwer v. Holms, NV Court, July 22, 2016

i. Proxy Solicitation Material on Schedule 14A—Oct. 25, 2016.

j. 17 C.F.R. § 240.14a-6 Filing Rrequirements

3. Application for Limited TRO – Oct. 19, 2016, MT Ct.

4. TRO, Judge Reynolds, Oct. 19, 2016

5. Def's Brief in Opposition to Motion to Dissolve – Oct. 26, 2016

6. Order, Nev. CT. Granting Preliminary Injunction in favor of Val Homs—May 24, 2016

7. Bakken, 2nd Supp. Brief, MT Ct. Aug. 16, 2016

8. Memo to JD to BC and DM, Nov. 28, 2016

9. Defendants' Counterclaim in NV. Ct. Dec. 5, 2016

10. Defendants' Memo in Support of Motion for TRO etc., Mt. Ct. Oc. 18, 2016

    Ex. 16 – Minn. Case, Claim against Carl George by Wash. Mutual Creditor, $7,610.77 Aug. 9, 2014

    Ex. 17 – Minn. Notice of Entry of Judgment against Carl George, Sept. 24, 2009

    Ex. 18 – Register of Actions, Aimco Calhoun v. Carl George, May 20, 2016--$322.

    Ex. 19 –Complaint, Hallenbeck v. Healthcare IP and Carl George, U.S. Dist. Ct., Minn. Jan. 24, 2011, charging that George made false statements to get the Pl to accept employment as the Chief Research at Healthcare—and George promised falsely to fund that position.

    Ex. 20 -- $18,000 judgment by Hallenbeck against George, Dec. 5, 2012

    Ex. 21 – Mackall v. George—complaint…it appears to be a lawyer suing George for his fee in a divorce, July 11, 2012.

    Ex. 22 -  Mackall v. George…Notice of Entry of Judgment, July 24, 2012.

    Ex. 23—Reliable Property v. Capital Growth Partners and George—Complaint in federal court against George for computer fraud, Jan. 09, 2014.

    Ex. 24—transcript of hearing, U.S. District Court, Reliable Property v. George where George states to Court in an attempt to explain his activity hacking into a computer system, "Anger got the better of me."  Feb. 20, 2014

    Ex. 25, Order from U.S. District Court enjoining George from assessing customer information on a computer, Feb. 14, 2014

    Ex. 26, Complaint, Minn. Gageldin v. George et al, alleging securities fraud, Aug. 30, 2014

    Ex. 27, Order for Judgment, Tageldin v. George, $11,666.64, Oct. 14, 2015

Ex. 28, Affidavit of Identification, 500 Lake v. George—judgment $11,130.45, Jan. 23, 2015

Ex. 29 – Transcript, Graiwer v. Holms, George acknowledges list of 9 judgments against him, June 27, 2016.

11. Case Information – CV 14-00544, Grawier v. Val Holms

12. Analysis of various Bakken By-laws and various state and federal statutes presented by BC to DM

13. Letter by Carl George "To whom it may concern" stating that triggering events have occurred and Eagle now has a majority of the voting power of Bakken's stock, July 21, 2016.

14. Letter to Bakken att: Dan Anderson Re: Put Notice by Carl George, July 20, 2016.

15. Letter to Bakken att:  Dan Anderson Re:  Notice of Conversion signed by Carl George, July 20, 2016.

16. Article of Incorporation, Multisys Language Solutions, Inc., June 2, 2008

17. Bylaws of Multisys Language Solutions, June 7, 2008

18. Form 8-K Bakken- Feb. 16, 2016.

19. Form 8-K/A filed May 10, 2016

20. Form 8-K filed May 10, 2016

21. Form 8-K filed May 6, 2016

22. Form 8-K filed July 20, 2016

**DANIEL J. MORRISSEY--PERSONAL BACKGROUND AND QUALIFICATIONS**

1.     I have been a tenured professor at Gonzaga University School of Law since 2001 and was Dean of its faculty from 2001 to 2004.  I have taught courses and conducted research in the areas of corporate and securities law throughout my more than thirty years as Dean and Professor at various law schools.  My academic research, writing, and coursework have included issues relating to the governance of publicly-traded companies.  I am conversant with leading academic and financial industry research regarding what constitutes effective corporate governance and the value it brings to public companies and their shareholders.  Along those lines my most recently published law review article compares the corporate governance system in our country with that of the People's Republic of China, Daniel J. Morrissey, *Managing the Wealth of Nations:  What China and America may have to Teach each other about Corporate Governance,* 68 S.M.U. L. Rev. 831 (2015).

2.     I earned my undergraduate degree, Phi Beta Kappa, and my law degree from Georgetown University.  After graduating from law school, I served as a law clerk to a U.S. District Court Judge in Chicago.  My professional focus on corporate and securities law began forty years ago when I started working as an attorney in the Division of Enforcement of the Securities and Exchange Commission ("SEC").  Before I became a full time academic I was also engaged in the private practice of law specializing in corporate and securities work with a law firm in Los Angeles that is now K&L Gates.

3.     I began my permanent career in legal education teaching courses in corporate and securities law at the University of Tulsa where I achieved tenure.   From 1994 until 1999, I was the Dean of St. Thomas University School of Law in Miami, Florida.  There I continued to teach and publish papers on corporate and securities law matters until I joined the faculty of Gonzaga