IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

BAKKEN RESOURCES, INC.

*Plaintiff*,                                                              Civil Action No. 1:15-cv-08686 ALC

v.

JOSEPH R. EDINGTON, et. al.

*Defendants*

---

**DEFENDANTS' REPLY TO**

**BAKKEN RESOURCES' RESPONSE IN OPPOSITION TO**

**DEFENDANTS' FIRST MOTION FOR STAY**

---

The Defendants via counsel, Michael Strage, submit the following Reply to *Bakken Resources Response in Opposition to Defendants' First Motion for Stay* ("*Response*" Doc #72) filed May 26, 2017.

I – DISCUSSION

1. For the sake of procedural clarity, Plaintiff Bakken's *Introduction* to its Response incorrectly begins with the statement that "**Plaintiffs'** [sic] motion for stay asks this court 'for an order staying proceedings in this case pending the outcome of proceedings in Nevada and Montana State Courts which shall determine the status of Wesley J. Paul as counsel and the corporate governance of Plaintiff Bakken Resources Inc.'" (*Response* p.1). It is the Defendants' Motion and this is their Reply to Plaintiff's papers.

1

2.      Bakken bases its substantive position against a stay entirely on the argument that it, "**does not consider the [underlying] state court proceedings to be central to this case**." (*Response* p.3 emphasis added). Bakken's logic is that if the state court proceedings are not central to this case, there is no basis to delay it. The logic is simple but incorrect because these Plaintiffs very ability to articulate it (and prosecute this action) relies on their having already won the very corporate control that the underlying state actions are in the judicial process of determining. So of course those issues are "central" to this case whose very fate will be largely based on their resolution. This Court need look no further than Bakken's own brief for how dependent this case is on the outcome of the others, and the extent to which it now seeks to litigate in detail the merits of those underlying actions and the ultimate as yet undecided issue of corporate control of Bakken Inc.

3.      Tellingly, while arguing the underlying actions are irrelevant, Bakken submits extensive evidence from them to try to get this Court to endorse the positions it is arguing in them, before they have been ruled on by Judges Flanagan and Reynolds. Bakken uses ten of their twenty-seven-page *Response* and 448 pages of selected exhibits from Nevada and Montana to proffer the merits of their position in the Nevada and Montana cases to convince this Court that there is no reason to delay these proceedings because they are unrelated.  Of course all of those arguments are being addressed elsewhere and  will be resolved within the purview of those courts, not here. Were this Court to accept Bakken's invitation to resolve them all in its favor here and now, it would be usurping those courts' authority, and taking the risk of making findings under Montana and Nevada State law inconsistent with the eventual rulings in those cases. Moreover, the assumption presented

by Bakken is that the matters before the Nevada and Montana courts, without discovery, summary judgment motions or trials, have been resolved in its favor, or to the extent that any issues remain it is a foregone conclusion that Bakken will prevail -so this Court may as well anticipate that outcome, without the issues being litigated before it either, find for Bakken, and allow this case to proceed.  Absent jurisdictional authority or a factual record before it, this Court has no basis for doing so.

4. Not parties in Nevada or Montana, the Defendants herein do not presume the outcome or merits of the cases in Nevada or Montana, or seek to back-handedly litigate the merits or presume the outcome before this Court. The required parties, issues, record and jurisdictional authority to address the issues being litigated in the Nevada and Montana courts are all absent here. Those cases, which this court should not decide, do bare upon the instant case because they will resolve the fight over Bakken's governance. And that determination must properly be left to the state courts. Plaintiffs attempt to end run those upcoming decisions, based as they are on self-serving declarations and hoped-for favorable judicial outcomes in pending state court matters, should be rejected.

5.  It is important to highlight the uncommon circumstance the Defendants bring before this Court. The underlying actions and this one do not relate to one another in the manner commonly raised as justifications for a stay of proceedings in that there are no: duplicative actions arising out of the same facts and circumstances; claims in both actions based on the same underlying alleged wrongs; common parties; common issues; common relief sought; deference to a first filed action; conflict of laws; conflict of jurisdiction; possible issue preclusion; or possible claim preclusion. The uncommon circumstance here

3

is even simpler and more clear cut. The corporate control of the Plaintiff entity is being contested in other courts, and that expected change in governance will end this case.

6. Bakken seeks to distinguish accepted legal authorities that establish this Court's inherent broad authority to stay proceedings. That inherent broad "loose cloak" authority and deference to the judgment of this Court exists to deal with meritorious but uncommon sets of circumstances such as the one at bar. The crucial link in this uncommon situation, requiring the exercise of this Court's broad discretion, is that the outcomes in Nevada and Montana will determine if Plaintiff will pursue this matter, not whether issues in the state court proceedings have any bearing on the outcome on the merits of the case herein.

7. Bakken cites cases regarding factors to be considered in granting a stay in fact patterns inapplicable to the circumstances herein. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800 (1976) and *McClellan v. Carland*, 217 U.S. 268 (1910) are inapposite to the facts of this stay motion. *Colorado River* as quoted by Bakken provided guidance in the instance of common issues and concurrent jurisdiction "the pendency of an action in the state court is no bar to **proceedings concerning the same matter in the Federal court having jurisdiction**, and the federal courts have virtually unflagging obligation to exercise the jurisdiction given them." Bakken offers no authority by which this Court has personal or subject matter jurisdiction over the issues being litigated in Nevada or Montana. It doesn't. Bakken argues that the five factors of *Colorado River* and *McClellan* do not favor a stay herein. The argument is unpersuasive since the Nevada and Montana state court proceedings and the federal court action brought by Bakken herein do not concern the same subject matter, legal or factual issues, or a jurisdictional dispute.

4

While the cases are connected so as to require a stay, the fact that they do not overlap in the manner suggested by the precedents Bakken cites is irrelevant to the resolution of this motion.

8. The Second Circuit in *Catskill Mountains Chapter of Trout Unlimited, Inc. v. United States EPA*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) considered five factors to be balanced on a case by case basis "even if not controlling of the action to be stayed" (multiple cites omitted) which are more appropriate to the facts before this Court:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

The underlying goal in evaluating these factors is to avoid prejudice. *Id*. quoting *LaSala v. Needham Co., Inc.* 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005).

(1)  Bakken has not presented any argument evidencing prejudice to its case if delayed. In fact, it may save Bakken needless litigation fees.

(2) The Defendants are seeking to avoid the potentially needless time and expenses of proceedings herein if the new Bakken governance elects to drop this case.

(3)  It is a waste of this Court's time, efforts and limited resources to proceed with a case that may be voluntarily dismissed.

(4)  The state court actions dispute the authority of the Holms versus the Anderson BOD and validity of a financing agreement. If proceedings herein are not stayed and the Holms BOD prevails, Bakken and ultimately its shareholders will have incurred needless

litigation fees to which the Anderson BOD will no doubt seek to deny any personal responsibility.

(5) The public is best served when the federal and state judicial systems work harmoniously each exercising the tasks best suited to the forum. Here, federal forum should allow the state courts to first decide who governs Bakken.

9. Bakken provides no authority for its statement that a preliminary injunction precludes the Court herein from staying proceedings. Bakken offers no facts or support for the proposition that the *status quo* imposed upon the litigants in Nevada or Montana will be effected by a stay herein. Quite the opposite, a stay herein promotes the *status quo* and promotes resolution in Nevada and Montana in a manner that does not favor or prejudice any party to the Nevada or Montana cases.

10. Bakken did not disclose that contrary to its present argument that a preliminary injunction in one case precludes the Court from staying proceedings in another, Bakken moved for a stay in the Montana proceeding pending the outcome in Nevada, which was denied. (*Response* Exhibit Q-17, p.7, ll.18-20, *Transcript of February 22, 2017 Hearing* Montana CDV-612). Judge Reynolds took the position that Bakken brought the matter in Montana and thereby chose the forum whose authority it could not later seek to circumvent based upon what Bakken perceived to be a more favorable forum in Nevada. At present time, courts in Nevada and Montana both claim jurisdiction. Bakken seeks to have the Court herein assume jurisdiction adding yet a third forum.

11. It is important to note that Bakken alleged, **"[B]ased on a detailed review, Defendant's motion provided fewer than ten or so true statement[sic] out of the 40 to**

6

**60 representations it made**, depending on how narrowly statements are parsed, such that the 25-page limit for this response could be entirely dedicated to correcting errors." (i.e. Bakken alleged no fewer than 30 to 50 untrue statements on the part of the Defendants.) (*Response* p.2 emphasis added). Bakken then stated that the greater than 30 to 50 untrue statements by the Defendants would be addressed in Part IV of its *Response*. In support of the allegation of 30 to 50 untrue statements, Bakken listed only 5 instances of alleged not credible factual and legal representations. Bakken's basis for the remaining 25 to 45 undisclosed alleged untrue statements is unknown. These general unsupported accusations are not responsive and fail to provide a basis for Bakken's opposition to the motion for stay.

As to alleged untrue statements for which some basis was provided by Bakken,

(1)  Ryan Edington was not named as a movant.

-  Ryan Edington's status as a Defendant is a markedly irrelevant issue in the motion for stay. Although Ryan Edington is a named defendant, there is no record of service upon Ryan Edington. If such record of service is later disclosed by Bakken, it is likely that Mr. Strage will appear on behalf Ryan Edington included with the other Defendants.

(2)  *Defendants' Motion Advocates on Behalf of Non-Parties*

-  The fourth factor to be considered in granting a stay per the *Catskill Mountains* analysis requires the court to consider "the interests of persons not parties to the civil litigation". The disclosure of some facts and circumstances of the state court proceedings is therefore not only appropriate but required. Bakken incorrectly refers to *Preliminary Injunctions* as if there have been final rulings. It is axiomatic that as in any dispute where final findings of

fact and conclusions of law have not been entered that the position on both sides of a dispute is based upon yet to be proven allegations such as the declaration of counsel for Bakken. To the extent available to the Defendants, the documentation upon which the Defendants relied for their disclosures was provided. Bakken has provided 19 exhibits and pages of argument to support Bakken's yet to be proven allegations in the state court actions. As to Defendants' counsel herein representing persons involved in the state court cases, counsel for the Defendants has made no such averments. If counsel representation is an arguable issue, it is important to note that Wesley Paul simultaneously represented both Bakken herein and the business interests of Carl George of Eagle Private Equity ("Eagle") in *Champions League Inc. v. Woodward et.al.* (Defendants' Exhibit J – April 6, 2016 *Champions League Inc. v. Woodward et.al.*, Case No.16-2514 Federal District Court S.D.N.Y.); (Defendants' Exhibit K - July 7 2014, Certificate of Incorporation - *Champions League, Inc.*). As detailed herein, Eagle is the co-party to the highly dubious financing deal that is the lynchpin to the Anderson BOD's attempt in the underlying actions to wrest control from the majority of Bakken shareholders whose Holms BOD would have this case dismissed.

(3)  *Non-Parties Presuming a Desired Outcome of Ongoing Litigation*

-  See reply to (2) above.

(4) *Misleading the Court with misattributed Quotations and References*

-  The entire text of Judge Reynolds' January 2017 *Preliminary Injunction* was provided (Defendants' Exhibit I to *Defendants' Memorandum ISO Motion for Stay)*. Judge Reynolds' *Preliminary Injunction* refers to his evaluation of the Nevada proceedings,

"[T]his Court is aware that rulings in Nevada have varied. For example, **one court found Eagle Equity transaction was a sham** and another that it was an exercise in business judgment."

(5)  *Making Assertions Directly in Conflict with Court Findings*

- See (4) above.

12.	Bakken refers to the Eagle transaction as granting an "11 million credit facility" in order to receive a controlling interest in $6,000,000 in Bakken assets. (*Response* p.24). The statement is patently false. Bakken's offering it as fact is further proof that it has no possible justification other than fraud or some other form of corruption or inappropriate self-dealing. Per Bakken's May 11, 2016 Form 8K SEC filing disclosing the Eagle – Bakken deal, "The Loan Agreement permits the Company [Bakken] to draw up to One Million dollars ($1,000,000) from a non-revolving credit facility provided by Eagle (the "Facility")." (*Response* Exhibit C-3, p.3, item 1.01). As pled by Bakken, Eagle provided $600,000 for its now claimed majority interest in undisputed cash and other liquid assets of $6,000,000. On information and belief based upon a diligent inquiry and search, Bakken has not disclosed in any forum or in disclosures to the SEC the full text of the Loan Agreement – Facility with Eagle Private Equity. Further, Bakken shareholders did not get the opportunity to vote or even comment as to whether the granting of a greater than half interest in their $6,000,000 in cash and assets for $600,000 was fair, equitable or in the best interest of Bakken. The Eagle deal has predictably become an acquisition of Bakken by Eagle.  The only factual basis that can explain the existence of the Eagle deal is Mr. Paul's close, prior, and ongoing relationship with Eagle's principal Mr. Carl George, and

9

the financial benefit Mr. Paul is continuing to derive from the improper terms of that deal that seek to keep the Anderson BOD improperly in control of the Company.

13. The Defendants do not claim that the Eagle Private Equity transaction being litigated in the Nevada or Montana proceedings is common to the proceedings herein, nor do they seek to have this Court litigate all of the legal ramifications flowing from its lack of legitimacy or merits at this time. What will affect the proceedings herein is the decision on the governance of Bakken, that will likely be informed by the dubious genesis and bogus terms of the Eagle deal. Nonetheless, Bakken repeatedly argues the merits of the Eagle deal. If this Court considers the Eagle deal of any importance in granting a stay, facts regarding the deal and Carl George's (principal of Eagle Private Equity) prior unsuccessful ventures, bankruptcies and history of judgments, and the full extent of his relationship to Mr. George must first be disclosed. (Defendants' Exhibit L - Carl George Judgments; Defendants' Exhibit M - Case 14-55 Complaint *Reliable Property Services LLC v. Carl George et.al*.). As evident from the Exhibits, Mr. George has a track record of failure. It is remarkable that prior to the Eagle deal on May 6, 2016 Bakken made no effort to inquire into Carl George's financial expertise, history of business failures, personal bankruptcies and judgments beyond conversations with Mr. George. And if they did, they ignored what they would have easily learned. (*Response* Exhibit S-19, pp.114 – 118, *Transcript of August 9, 2016 Hearing* Montana CDV-612 Testimony of Dan Anderson – Anderson CEO BOD at the hearing). According to Mr. Anderson, Bakken's decision to enter into a Loan Agreement with Mr. George was based upon "their vision for the company" and little else. (*Response* Exhibit S-19, p. 115, l.2). As attested to by the Mr. Anderson, the Bakken BOD

did not seek any information beyond talk of a vision with which to make "informed decisions" an absolute requirement when exercising justifiable business judgment. *Smith v. Van Gorkom*, 488 A.2d 858 Del. S.C. 1985).

14. The obvious question is, why no effort was made to conduct due diligence into Mr. George's background? Or if there was, why nothing came of it? The answer lies in the improperly undisclosed prior and current association between Mr. George and Mr. Paul.

(1) It is evident that Mr. Paul has known Mr. George since at least 2014. In July of 2014, two years prior to the Eagle deal May 6, 2016, Mr. Paul was the incorporator and agent for *Champions League, Inc*., a New York corporation whose CEO (and on information and belief sole shareholder) is Carl George. (Defendants' Exhibit K - July 7 2014 – Certificate of Incorporation - Champions League, Inc.).

(2) Mr. Paul introduced Mr. George to Bakken (*Response* Exhibit S-19 p.114, ll 15-17, testimony of Mr. Anderson).

(3) April 6, 2016, one month prior to the Eagle – Bakken deal and while the case herein was underway, Mr. Paul simultaneously represented Bakken and Carl George's interests when Mr. Paul filed *Champions League, Inc.* v. *Woodward et.al*., Case No.16-cv-02514 in the Federal District Court S.D.N.Y., on behalf of Mr. George's entity Champions League, Inc. (Defendants' Exhibit J).

(4) Aside from allowing Bakken to enter into the Eagle deal without submission for a vote or even comment by the Bakken shareholders, as required by law, there is no submission by Bakken in Nevada, Montana or SEC that Mr. Paul advised or sought an objective *Fairness Opinion*[i] of the transaction.

## II – RELIEF REQUESTED

15. As detailed above and in the prior filed *Defendants' Memorandum ISO Motion for Stay,* the proceedings herein should be stayed pending the outcome the state court proceedings in Nevada and Montana.

This 2nd of June, 2017

Submitted by:

*/s/ Michael Strage*

_____
Michael Strage
Law Office of Michael Strage
425 Madison Avenue, Suite 902
New York N.Y. 10017
(646) 642-0701
michaelstrageesq@gmail.com
Attorney for Defendants

---

[i] A *Fairness Opinion* (detailed valuation) is a report evaluating the facts of a merger or acquisition. Fairness opinions are compiled by qualified independent analysts or advisors, usually an investment bank, provided to key decision makers. The report objectively opines on the fairness of the offered acquisition price.