# EXHIBIT M

Case 14-55 Federal District Court Minnesota
Complaint - *Reliable Property Services LLC v.
Growth Capital Partners LLC and Carl George*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Reliable Property Services, LLC, | ) | Case No. __14-55_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | **VERIFIED COMPLAINT** |
| vs. | ) | **(Jury Trial Demanded)** |
| | ) | |
| Capital Growth Partners, LLC and Carl T. George, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Reliable Property Services, LLC ("RPS"), brings this Verified Complaint against Defendants, Capital Growth Partners, LLC ("CGP") and Carl T. George, and states and alleges as follows:

**PARTIES**

1. Plaintiff Reliable Property Services, LLC is a Minnesota limited liability company with its principal place of business located at 3245 Terminal Dr., Eagan, MN 55121.

2. Defendant Capital Growth Partners, LLC is a Missouri limited liability company. Its registered agent is Michael T. George having an address at 2525 S. Brentwood Blvd., Suite 102, St. Louis, MO 63144.

3. Defendant Carl T. George is an individual residing in the State of Minnesota having an address at 2212 Oliver Ave. S., Minneapolis, MN 55405. Upon information and belief, Mr. George is the sole owner of Capital Growth Partners, LLC.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States as it is based upon violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.

5. This Court has personal jurisdiction over Defendant Capital Growth Partners, LLC because its corporate headquarters is in Minnesota and it otherwise conducts business in Minnesota. This Court has personal jurisdiction over Defendant Carl T. George because he resides in Minnesota. Additionally, the alleged conduct targeted RPS' business and computer server that is located in Minnesota.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Carl T. George is believed to reside in this judicial district, can be found in this judicial district, and a substantial part of the events giving rise to this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

7. In about 1999, Reliable Snow Plowing, Inc. engaged CGP to develop a custom software application for its snow plowing business. CGP accepted the engagement and co-developed with Reliable Snow Plowing, Inc. a software program called "SnowMaster."

8. Mr. Joe Schierl was the sole shareholder of Reliable Snow Plowing, Inc. and was personally the joint owner of all the intellectual property rights in the SnowMaster program at the time of its initial development.

2

9. The SnowMaster program was installed on Reliable Snow Plowing, Inc.'s servers for use in its business.

10. Reliable Snow Plowing, Inc.'s computer network and server are password protected to limit access solely to authorized users. An account was created for Carl T. George with a user name and password for the sole purpose of allowing him to access the SnowMaster program to maintain the SnowMaster program and enhance the SnowMaster program at Reliable Snow Plowing, Inc.'s direction under its maintenance agreement with Mr. George's company (CGP).

11. In about 2002, Reliable Property Services, LLC f/k/a Reliable Acquisition Company, LLC ("RPS") acquired Reliable Snow Plowing, Inc. including its server and accounts. At all times, RPS' computer network and server have been password protected to limit access only to authorized users.

12. From 2002 to 2006, RPS paid CGP over $200,000 to maintain the SnowMaster program and enhance it with new features and functionality requested by RPS.

13. In 2006, RPS paid CGP an agreed upon final fee to terminate CGP's maintenance services for the SnowMaster program. CGP accepted RPS' offer and upon acceptance of the offer, Mr. George's authorization to access RPS' network, server, computers, or any software contained therein, including, but not limited to, the SnowMaster program, was revoked.

14. From 2006 to the present, RPS has spent in excess of $300,000 to improve the SnowMaster program, all without any involvement or assistance from Defendants.

15. On about December 20, 2013, Carl T. George, without authorization and disgruntled over RPS' development of a new software program that he erroneously believes CGP has an ownership claim in, accessed RPS' server and disabled the SnowMaster program. Subsequently, Mr. George enabled the SnowMaster program, but agreed to refrain from interfering with the operation of the program a second time only through January 3, 2014. If RPS does not comply with his demands by January 3, 2014, Mr. George has threatened to disable the SnowMaster program a second time by January 10, 2014.

16. While Carl T. George had access to RPS' server, Mr. George anticipated that RPS would discover how he gained access to its computer network and server and would block him from using that entry point again. Therefore, Mr. George embedded malware in the code for the SnowMaster program in the form of a "time bomb" whereby the SnowMaster program will be disabled a second time as of a date and time chosen by Mr. George. In this case, the dates chosen by Mr. George were January 3, 2014 and January 10, 2014.

17. RPS is a leading provider of snow removal services for commercial and retail businesses including, but limited to, large retail establishments and medical facilities. RPS has approximately 300 employees that service about 600 locations in Minnesota, Wisconsin, and Iowa. In Minnesota, some of RPS' larger customers include Target Corporation, Allina Health System, including, but not limited to, Abott Northwestern Hospital, and Lund Food Holdings, Inc.

18. In order to provide timely and efficient snow removal services to its clients, RPS relies on the SnowMaster program for virtually every aspect of RPS' business from invoicing to coordinating its snow removal crews. Disabling the SnowMaster program essentially results in a shutdown of RPS' business, and could result in great harm to the public if, for example, RPS is incapable of removing the snow from Allina Hospitals in the event of a medical emergency.

19. If CGP's threatened actions are not restrained by this Court, RPS will be unable to operate its snow removal business resulting in irreparable harm to its business, goodwill, and the public.

## COUNT I
### Violation of the Federal Computer Fraud and Abuse Act
### 18 U.S.C. § 1030

20. RPS restates and incorporates by reference the allegations in Paragraphs 1-19.

21. Defendants have intentionally and without authorization accessed RPS' protected computer(s) and server and caused damage and loss by disabling the operation of the SnowMaster program and embedding a malware "time bomb" into the SnowMaster program's code whereby Defendants can disable the operation of the SnowMaster program at any future time and date of their choosing, without RPS' authorization.

22. Defendants were not authorized, and were aware that they were not authorized, to access RPS' network, server, computer(s) or software, including but not limited to, RPS' SnowMaster program.

5

23. The computer(s) and computer system(s) that Defendants intentionally accessed without authorization constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used in and affect interstate commerce.

24. Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A), by knowingly causing the transmission of a program or code, the malware "time bomb" which allows Defendants to disable the operation of the SnowMaster program at any future time and date of their choosing, by transmitting the malware code or program into the code of the SnowMaster program without authorization, and as a result of such conduct, intentionally caused damage without authorization, to a protected computer, including damage, within the definition of 18 U.S.C. § 1030(e)(8), such as impairment to the integrity of the SnowMaster program by disabling its operation and embedding a malware "time bomb" into its program code, impairment to the availability of the SnowMaster data, information, and program by disabling its operation, and impairment to the integrity and security of RPS' network, server, and computers by accessing them without authorization and implanting the malware "time bomb" which systematically and continuously impairs the integrity and security of RPS' network, server, and computers.

25. Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B), by intentionally accessing a protected computer without authorization and as a result of such conduct, recklessly caused or will cause, if Defendants' offense is completed, damage within the definition of 18 U.S.C. § 1030(e)(8), including but not limited to, impairment to the integrity of the SnowMaster program by disabling its

6

operation and embedding a malware "time bomb" into its program code, impairment to the availability of the SnowMaster data, information, and program by disabling its operation, and impairment to the integrity and security of RPS' network, server, and computers by accessing them without authorization and implanting the malware "time bomb" which systematically and continuously impairs the integrity and security of RPS' network, server, and computers

26. Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C), by intentionally accessing a protected computer without authorization and as a result of such conduct, caused or will cause, if Defendants' offense is completed, damage within the definition of 18 U.S.C. § 1030(e)(8), including but not limited to, impairment to the integrity of the SnowMaster program by disabling its operation and embedding a malware "time bomb" into its program code, impairment to the availability of the SnowMaster data, information, and program by disabling its operation, and impairment to the integrity and security of RPS' network, server, and computers by accessing them without authorization and implanting the malware "time bomb" which systematically and continuously impairs the integrity and security of RPS' network, server, and computers.

27. Defendants violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C) have caused, or will cause if Defendants' offense is completed, loss within the definition of 18 U.S.C. § 1030(e)(11), including but not limited to, loss in excess of $5,000 over a one year period, within the meaning of 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), including sustaining reasonable costs associated with responding to CGP's violation,

7

costs associated with investigating CGP's violation, costs associated with implementing corrective measures to prevent future damage by CGP, lost revenue because of CGP's violation, as well as other consequential damages incurred because of interruption of service of the SnowMaster program, and costs associated with bringing this action responding to CGP's violations.

28. Defendants violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(5)(A), (a)(5)(B), (a)(5)(C), have each caused individually, or will cause, if Defendants' offense is completed, loss to RPS in excess of $5,000 over a one year period, within the meaning of 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), (e)(11), including sustaining reasonable costs associated with responding to CGP's violation, costs associated with investigating CGP's violation, costs associated with implementing corrective measures to prevent future damage by CGP, lost revenue because of CGP's violation, as well as other consequential damages, including lost revenue, incurred because of interruption of service of the SnowMaster program, and costs associated with bringing this action responding to CGP's violations.

29. Defendants violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(5)(A), (a)(5)(B), (a)(5)(C), have each caused individually, or will cause, if Defendants' offense is completed and RPS is unable to provide snow and ice removal for its retail and commercial customers, which include medical facilities, physical injury to a person, within the meaning of 18 U.S.C. § 1030(c)(4)(A)(i)(III).

30. Defendants violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(5)(A), (a)(5)(B), (a)(5)(C), have each caused individually, or will cause, if

8

Defendant' offense is completed and RPS is unable to provide snow and ice removal for its retail and commercial customers, which include medical facilities, a threat to public health or safety, within the meaning of 18 U.S.C. § 1030(c)(4)(A)(i)(IV).

31. As a result of Defendants' violations of 18 U.S.C. §§ 1030(a)(5)(A), (a)(5)(B), (a)(5)(C), RPS has suffered loss and damage in an amount to be determined at trial. In addition, the misconduct of CGP has caused, or will cause if Defendants' offenses are completed, immediate and irreparable injury to RPS, including but not limited to, loss of goodwill and business reputation, loss of customers and contracts, and loss of future customers and contracts, for which there is no adequate remedy at law.

32. RPS is entitled to maintain this civil action seeking compensatory damages and equitable relief pursuant to 18 U.S.C. § 1030(g).

## PRAYER FOR RELIEF

**WHEREFORE**, RPS prays that the Court enter judgment:

A. In favor of RPS and against Defendants on all of RPS' claims;

B. Pursuant to 18 U.S.C. § 1030(g), temporarily, preliminarily, and permanently enjoining and restraining Defendants, and CGP's employees, agents, representatives, attorneys, and all persons acting or claiming to act on its behalf or under their direction or authority, and all persons acting in concert or in participation with them, from:

    (1)    Accessing RPS' computer(s), network, or server; and

    (2)    Interfering with the operation of RPS' software including, but not limited to, its SnowMaster program;

9

C.  Awarding RPS compensatory damages as provided by 18 U.S.C. § 1030(g);

D.  Awarding RPS post judgment interest pursuant to 28 U.S.C. § 1961;

E.  Awarding RPS prejudgment interest calculated from December 20, 2013; and

F.  Awarding RPS such other relief as the Court may deem just and equitable as provided by 18 U.S.C. § 1030(g).

Respectfully submitted.

WINTHROP & WEINSTINE, P.A.

Dated: January 6, 2014

s/Peter J. Gleekel
Peter J. Gleekel, #149834
pgleekel@winthrop.com
Bradley J. Walz, #339891
bwalz@winthrop.com

3500 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402
Telephone: 612-604-6400
Facsimile: 612-604-6800

*Attorneys for Plaintiff*
*Reliable Property Services, LLC*

8661914v1

10

## VERIFICATION

I, James Hansen, having been duly sworn, deposes and states: That I am the Manager of Reliable Property Services, LLC, that I have read the foregoing Verified Complaint and know the contents thereof, and that the same are true of my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Reliable Property Services, LLC



James Hansen
Manager

Subscribed and sworn to before me
this 6th day of January, 2014.

_____
Notary Public

8660793v1

DEBORAH A. LOVE
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2015