USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 5-15-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BAKKEN RESOURCES, INC. and VAL HOLMS,

          Plaintiffs,

   -against-           1:15-cv-8686 (ALC)

JEROD EDINGTON, RYAN EDINGTON,   **OPINION & ORDER**
JOSEPH EDINGTON, IWJ CONSULTING
GROUP, INC., TRIAX CAPITAL
MANAGEMENT, INC., AMERICAN
CORDILLERA MINING CORPORATION,
and MARYCLIFF INVESTMENT CORP.

          Defendants.
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

On November 4, 2015, Plaintiff Bakken Resources, Inc. ("Bakken Resources") and Val Holms filed suit against Jerod Edington, Ryan Edington, Joseph Edington ("Edington"), IWJ Consulting Group, Inc., Triax Capital Management, Inc., American Cordillera Mining Corporation, and Marycliff Investment Corp. Complaint (ECF No. 1). Plaintiff filed an amended complaint on March 28, 2016. First Amended Complaint (ECF No. 41) ("Am. Compl.").

Before this Court is Defendants' motion to stay this case pending the outcome of cases involving these parties in Montana and Nevada state court. For the following reasons, Defendants' motion is DENIED.

1

## BACKGROUND

### I. Factual Background

Plaintiff's Amended Complaint is 147 pages long. *See* Am. Compl. This Court accordingly only recites those facts necessary to contextualize Defendants' pending motion.

Plaintiff sued Edington, members of his family, and entities associated with him for RICO violations, fraud, breach of fiduciary duty, tortious interference with prospective business advantage, civil conspiracy, malicious prosecution, conversion, unjust enrichment, and violations of the Securities Exchange Act.

The allegations relate to a reverse merger transaction that ultimately resulted in the creation of Plaintiff Bakken Resources. In a reverse merger transaction, a publicly-traded company with few or no assets merges with a non-public company that has assets or business operations, thereby creating a publicly-traded company with assets. *See id.* ¶ 52.

Around December 2009, Edington met Val Holms, a now deceased former plaintiff in this action. *Id.* ¶ 57. Edington proposed that Val Holms engage in a reverse merger transaction to create a company holding certain mineral assets that Holms held in North Dakota. *Id.* ¶¶ 57-60. Edington first suggested they use a shell company that he controlled, ADP Antiquities, Inc. ("APD") as the public company. However, this transaction did not close. *Id.* ¶¶ 161-65. Ultimately, the parties successfully completed the reverse merger through another shell company allegedly controlled by Edington, Multisys Language Solutions ("MLS"). *Id.* ¶¶ 169-72.

Plaintiff alleges that Edington made misrepresentations and engaged in self-dealing during the failed APD transaction and the successful MLS merger. *Id.* ¶¶ 15; 78-81; 85-87; 105-06. Plaintiff further alleges that Edington and others continued to harm Plaintiff after the reverse merger was finalized through a number of malicious prosecutions in state court. *Id.* ¶¶ 396-423.

### A. Control of Bakken Resources

Since Plaintiff's complaint was filed, a series of events have called into question the control over Bakken Resources. Defendants contend that the control of Bakken is directly relevant to this matter because the Holms Board of Directors ("Holms BOD")—which they argue lawfully runs the company—would not prosecute this lawsuit. *See* Defendants' Memorandum in Support of Motion to Stay at 1 (ECF No. 71) ("Def. Mem"). Accordingly, this Court summarizes facts relevant to the control of Bakken Resources below.

#### i. Replacement of Board of Directors

The parties' characterizations of the replacement of the Bakken Resources Board of Directors ("BOD") differ. Both parties agree that on July 20, 2016 Allan Holms replaced Dan Anderson ("Anderson BOD") as the head of Bakken Resources. *See* Defendants' Status Conference Statement at 2 (ECF No. 65) ("Defs' Conf Statement"); Plaintiff's Response to Defendants' Status Conference Statement at 2 (ECF No. 66) ("Pl Conf Statement"). The newly instituted Holms BOD put a litigation hold on all pending cases and terminated Wesley Paul as corporate counsel. Defs' Conf Statement at 2.

Defendants contend the Holms BOD was legitimately "installed by the written consent of a majority of the Bakken shareholders." *Id.* Plaintiff, in contrast, asserts that Allan Holms illegitimately obtained voting share proxies from his half-brother Val Holms. Pl Conf Statement at 2.

On July 21, 2016, both parties sued in Nevada and Montana state court to resolve the control of Bakken Resources. That litigation is described below.

### 1. Triggering Event

Plaintiff further asserts that another entity—Eagle Private Equity ("Eagle")—obtained a controlling share position in Bakken as a result of the Holms takeover. On May 6, 2016, Bakken Resources had entered into an agreement with Eagle, a New York-based private equity firm. ("Eagle Transaction"). *See* May 6, 2016 8-K Report at 3 (ECF No. 66-1). In short, under the Eagle Transaction, Bakken Resources could draw up to one million dollars from a non-revolving credit facility provided by Eagle. *Id.* The Facility was unsecured. However, upon certain triggering events "generally described as changes in control of the Company," loans were convertible into shares of a newly-designated class of Bakken Resources' Series A Preferred Stock. *Id.* Holders of Series A Preferred Stock could convert each share into one hundred shares of Common stock and obtain one vote for each share of Common. *Id.*[1]

Plaintiff contends that the Holms takeover constituted a "triggering event." On the day of the takeover, Eagle elected to convert $600,000 of loans into Series A Preferred stock. July 20, 2016 8-K Report at 4 (ECF No. 66-3). As a result, Eagle held 600,000 shares of Series A Preferred Stock, triggering its ability to vote the equivalent of 60 million shares of Bakken's common stock. *Id.* Plaintiff argued that this would allow Eagle to effectively nullify the Holms BOD takeover through exercising its voting rights. *See* Temporary Restraining Order at 4, *Nev. Derivative Action* (ECF No. 66-4). As discussed below, Defendants contest the legality of the Eagle Transaction.

---

[1] On May 17, 2016, Val Holms had challenged the legality of the Eagle Transaction in Nevada state court. After initially granting a TRO to Holms stopping the transaction, the court denied Holms' request for a preliminary injunction and allowed the deal to go forward. *See Holms v. Bakken Resources, Inc. et al.*, No. 16-01086 (Nev. 2d Jud. Dist. Washoe Cnty. filed May 17, 2016) (ECF No. 66-2). That case, along with the other Nevada litigation described in this opinion, was consolidated with *Graiwer v. Holms*, No. CV14-00544 ("Nev. Derivative Action").

### ii. The Nevada Proceedings

On July 21, 2016, the Anderson BOD sued in Nevada state court, seeking a TRO against the Holms takeover. Judge Flanagan granted the TRO on July 22, 2016. Temporary Restraining Order, *Nev. Derivative Action* (ECF No. 66-4). On November 1, 2016, the court extended the TRO pending a formal decision following trial on the merits. Order Extending TRO and Granting Leave to File Counterclaim, *Nev. Derivative Action* (ECF No. 73-9). Trial was set to commence on April 17, 2017. *Id.* This Court has not received any updates regarding the status of the Nevada state court proceedings.

### iii. The Montana Proceedings

On July 21, 2016, the Anderson BOD simultaneously sought a TRO against the Holms takeover in Montana state court. Judge Seeley granted a TRO in favor of the Anderson BOD on July 22, 2016. Order Granting Temporary Restraining Order and Order to Show Cause, *Bakken Resources, Inc., v. Holms et al.*, No. CDV-2016-612 (Mont. 1st Jud. Dist. Ct., Lewis & Clark Cnty. July 22, 2016) (ECF No. 65-2) ("Mont. Action").

At the same time, the Holms BOD sought a TRO before a different judge in Montana state court to, *inter alia*, prohibit the Anderson BOD from continuing to act as corporate officers. *Bakken Resources, Inc. v. Anderson et al.*, No. DDV-2016-611 (Mont. 1st Jud. Dist. Ct., Lewis & Clark Cnty. July 21, 2016). Both Montana actions have been consolidated under DDV 2016-612 and are referred to herein as the "Mont. Action."

On October 19, 2016, Judge Reynolds granted a TRO in favor of Holms pending a determination of whether: (1) the July 20, 2016 election of the Holms BOD was valid and enforceable, (2) the Eagle Transaction was fraudulent, and (3) there was a triggering event

5

allowing Eagle to convert its loan to stock. Temporary Restraining Order, *Mont. Action* (ECF No. 73-14).

On January 3, 2017, Judge Reynolds granted the Holms BOD a preliminary injunction and ordered an evidentiary hearing. Order Granting Preliminary Injunction and Ordering Evidentiary Hearing, *Mont. Action* (ECF No. 73-16). An evidentiary hearing scheduled for February 28, 2017 was cancelled. As of May 2017, no hearing has been rescheduled. Plaintiffs' Memorandum in Opposition to Motion to Stay at 11 (ECF No. 72) ("Pl Mem"). This Court has not received any further updates on the status of the Montana litigation.

Accordingly, the Anderson BOD currently retains control of Bakken Resources under the Nevada ruling, while the Holms BOD has control of the company under the Montana ruling.

## II. Procedural Background

On May 4, 2017, Defendants filed a motion to stay these proceedings pending a determination of who controls the Bakken BOD in the Nevada and Montana state court proceedings. Def Mem. Plaintiff responded in opposition on May 26, 2017. Pl Mem. Defendants filed a reply brief on June 2, 2017. ECF No. 74 ("Def Reply").

Accordingly, the Court considers this matter is fully submitted.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

Plaintiff contends that the *Colorado River* doctrine governs whether to grant a stay in this matter. Pl Mem at 12. Defendants argue that *Colorado River* is inapposite, as here the federal

court does not have concurrent jurisdiction over the issues being litigated in state court. Def Reply at 4. Defendants contend that this Court should instead apply the five factors articulated in *Catskill*.

*Colorado River* is an abstention doctrine that applies when "state and federal courts exercise concurrent jurisdiction simultaneously." *Village of Westfield v. Welch's*, 170 F.3d 116, 120 (2d Cir. 1999) (quoting *Burnett v. Physician's Online Inc.*, 99 F.3d 72, 76 (2d Cir. 1996)). Accordingly, "a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer v. Cnty. Of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *National Union Fire Ins. Co. of Pittsburgh, Pa v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).

Here, this Court does not exercise concurrent jurisdiction over the state court proceedings. The state court question of who runs Bakken is separate from the questions presented in this case. Accordingly, *Colorado River* is inapplicable.

Generally, [i]n deciding whether to stay proceedings, courts in the Second Circuit examine the following five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (collecting cases).[2] In analyzing these factors on a case-by-case basis, "the

---

[2] While courts typically apply this analysis in situations with pending federal cases, courts in this Circuit have applied this test to cases involving state law claims. *See Specrite Design, LLC v. Elli N.Y. Design Corp.*, No. 16-

7

basic goal is to avoid prejudice." *Id.* (quoting *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005)).

The "proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Moreover, "if there is even a fair possibility that the stay for which he prays will work damage to some one else,' the movant 'must make out a clear case of hardship or inequity in being required to go forward.'" *LaSala*, 399 F. Supp. 2d at 427 (quoting *Landis*, 299 U.S. at 255). Indeed, "[a]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Louis Vuitton Malletier S.A.*, 676 F.3d at 97 (quoting *Hicks v. City of N.Y.*, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003)).

## DISCUSSION

### I. The private interests of Plaintiff in proceeding expeditiously as balanced against the prejudice to Plaintiff if delayed

Defendants assert that Plaintiff has not showed how a stay will result in prejudice. Def Reply at 5. However, Defendants, not Plaintiff, bear the burden of showing that a stay is warranted. *See Clinton*, 520 U.S. at 708.

Regardless, Plaintiff does allege prejudice. Plaintiff contends that a stay would result in an "indefinite litigation hold." Pl Mem at 18 (citing *Landis*, 299 U.S. at 258). As Plaintiff argues, it is unclear when the state court cases will be resolved; the Nevada and Montana courts could issue inconsistent findings; the parties might appeal; and those appeals could be inconsistent. *Id.* at 18-19. Further, Plaintiff argues that issuing stays in cases such as this could

---

6154, 2017 WL 3105859 (S.D.N.Y. July 20, 2017); *Tradewinds Airlines v. Soros*, No. 08-5901, 2009 WL 43528 (S.D.N.Y. Feb. 23, 2009).

8

prejudice plaintiffs generally by allowing defendants to avoid suit by filing state claims in foreign jurisdictions. *Id.* at 19.

It is clear that "plaintiffs to a civil action have a 'strong interest' in their 'expeditious resolution.'" *Harris v. Nassau Cnty.*, No. 13-4728, 2014 WL 3491286, at *4 (E.D.N.Y. July 11, 2014) (collecting cases). The Nevada and Montana state court actions have been pending for nearly two years, and it is unclear when the ownership of Bakken Resources will ultimately be resolved. More importantly, as discussed *infra*, the question of who controls Bakken Resources does not directly bear on whether this Court can entertain this action.

Accordingly, Plaintiff has demonstrated prejudice.

## II. The private interests of and burden on defendants

Defendants argue that continuing to litigate burdens them because they must spend time and resources litigating this case when, if the state courts determine that the Holms BOD rightfully controls Bakken, the BOD will dismiss this case. Def Reply at 5. Defendants also note that under the currently controlling Montana court ruling, Plaintiff lacks authority to proceed with this case. Def Mem at 8.

However, this Court notes that under the Nevada ruling, the Anderson BOD retains control over Bakken. Moreover, litigation often presents the possibility that, for any number of reasons, a plaintiff will ultimately dismiss the case.

Accordingly, Defendants have shown some burden in continuing to litigate.

## III. The interests of the courts

Defendants assert that continuing to litigate this action will waste judicial resources, as the state court litigation may well reveal that the Holms BOD controls Bakken, which, in turn, will drop this case. Def Reply at 5-6.

Plaintiff contends that Defendants may not speak for the Holms BOD, which is not a party to this action, and it is thus unclear whether the Holms BOD would even dismiss this case.³ Pl Mem at 21. Further, the state court litigations will not determine the federal claims at issue in this matter. *Id.* at 16.

To be sure, courts have an interest in conserving resources. *See Albert v. Blue Diamond Growers*, 232 F. Supp. 3d 509, 513 (S.D.N.Y. 2017). Defendants are correct that staying this action could serve the interests of judicial economy.

However, the question at issue in the state courts—who controls Bakken Resources—is not dispositive of whether this Court can and should continue to entertain this action. Regardless of who is at the helm, Bakken Resources has standing to pursue this suit. The question is only *who* runs Bakken and *whether* those individuals will *decide* to continue litigating this action. *Cf. Specrite Design, LLC.*, 2017 WL 3105859, at *6 (S.D.N.Y. July 20, 2017) (where Plaintiff's claims are legally "*contingent* upon the outcome in the State Court Action," proceeding "without a stay would lead to unnecessary litigation that is time-consuming for this Court and for the parties") (emphasis added); *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11-1608, 2012 WL 2865485, at *4 (S.D.N.Y. July 10, 2012) (stay would conserve resources when "issues to be considered in the [similar proceeding] *directly relate* to petitioners' claims here, and an early decision on [those issues] will obviously clarify whether petitioners have a *legally viable basis* for relief") (emphasis added).

Thus, staying this action will not necessarily conserve judicial resources.

---

³ Plaintiff claims that Defendants' brief improperly asserts the interests of the Holms BOD, a non-party here. Pl Mem at 21. However, as discussed below the interests of non-parties is a proper factor for analysis under *Catskill*.

10

## IV. The interests of non-parties to the litigation

Defendants argue that the Holms BOD has an interest in this matter, as it claims rightful control of Bakken Resources and seeks to stay this case as an exercise of that control. Further, Bakken and its shareholders will incur needless litigation fees if unnecessary litigation continues. Def Reply at 5-6.

On the other hand, Bakken shareholders who support the Anderson BOD's claims here have an interest in expeditiously pursuing this case.

## V. The public interest

Defendants argue that the public is best served when state and federal judicial systems each exercise the tasks best suited to their forum, and thus the public interest is served by allowing the state courts to first decide who controls Bakken Resources. Def Reply at 6.

Generally, "considerations of judicial economy are frequently viewed as relevant to the public interest" and "weigh against the investment of court resources that may prove to be unnecessary." *Estate of Heiser*, 2012 WL 2865485, at *5. Additionally, whether resolution of the pending matter may "limit or narrow the issues" in this case counsels in favor of a stay. *Builders Federal (Hong Kong) Ltd. V. Turner Const.*, 655 F. Supp. 1400, 1407 (S.D.N.Y. 1987). However, as discussed *supra*, granting a stay would not necessarily narrow the issues before this Court or conserve judicial resources.

The *Catskill* factors weigh in favor of both parties to this litigation. Yet ultimately, the inquiry centers around prejudice. *See Catskill Mountains Chapter of Trout Unlimited, Inc.*, 630 F. Supp. 2d at 304. Defendants have not met their burden of showing a clear case of hardship in being required to continue litigating. The mere possibility that state court litigation will reveal

that another person controls Plaintiff company, and that person might withdraw this litigation, is not sufficiently compelling. Meanwhile, Plaintiff has shown prejudice in being denied the opportunity to expeditiously litigate this action.

Accordingly, Defendants' motion for a stay is DENIED.

Dated: March 15, 2018
      New York, New York

SO ORDERED.

_____
Andrew L. Carter, Jr.
United States District Judge