USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3-29-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

BAKKEN RESOURCES, INC.,

        Plaintiff,

15 Civ. 8686 (ALC)

-against-

**OPINION AND ORDER**

EDINGTON, ET AL,

        Defendants.

------------------------------------------------------------X

**ANDREW L. CARTER, United States District Judge**:

    Plaintiff Bakken Resources, Inc. (the "Company" or "Bakken") brings this action against Joseph Edington, Jerod Edington, Ryan Edington, IWJ Consulting Group, Inc. ("IWJ"), Triax Capital Management, Inc. ("Triax"), American Cordillera Mining Corporation ("Cordillera"), and Marycliff Investment Corp (collectively the "Edingtons" or "Defendants") alleging causes of action under: Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962; Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j; Section 17 of the Securities Exchange Act of 1934, 15 U.S.C. § 78q; and various state law claims. ECF No. 41. The following motions are currently before the Court: 1) Defendants' Motion to Dismiss these actions for lack of personal jurisdiction, improper venue, and failure to state a claim; 2) Plaintiff's motion to transfer venue; and 3) the Parties' Motions for Sanctions. For the reasons

1

discussed below, Defendants' motion to dismiss is **GRANTED**, Plaintiff's motion to transfer is **DENIED**, and the Parties' motions for sanctions are **DENIED**.

## BACKGROUND

I. **Factual Background**[1]

**A. The Parties**

Bakken is a Nevada Corporation with securities registered under Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78l(g), and with its principal place of Business in Montana.[2] FAC. ¶10.

Joseph R. Edington ("Edington") served as Bakken's promoter, agent, and principal during the Company's forming stages in late 2010. *Id.* ¶16. Edington is domiciled in Washington. *Id.* ¶13. Jerod Edington ("Edington II") and Ryan Edington ("Edington III") are Edington's sons and are also domiciled in Washington. *Id.* ¶¶ 17-18.

IWJ was a Nevada limited liability company. Edington II served as IWJ's managing member and Janelle Edington served as IWJ's registered agent. *Id.* ¶ 21. IWJ regularly appears in consulting agreements mentioned in public disclosures filed by the various public reporting companies that the Edingtons have directly or indirectly controlled. *Id.* Triax Capital Management, Inc. was a Nevada corporation. *Id.* ¶ 22. Marycliff Investment Corp. was a Washington corporation registered to Edington and served as another location where the

---

[1] The following facts derive from Plaintiff's First Amended Complaint (ECF No. 41, "FAC") and are presumed true for the purposes of this motion. The Court will only recite the facts relevant to the pending motions.
[2] Val Holms, former Bakken CEO and plaintiff in this action, is now deceased.

2

Edingtons placed assets. *Id.* ¶ 23. Cordillera is a Nevada Corporation that Edington transferred silver mining assets belonging to Bakken to. *Id.* ¶ 24.

### B. The Edingtons' Relationship with Bakken

Edington was introduced to Holms by Holms' half-brother, Allan Holms, which led to a series of meetings between Val Holms and Edington. These meetings first took place in Spokane, Washington around December 2009. *Id.* ¶ 57. Edington discovered that Val held valuable oil and gas assets in North Dakota.[3] *Id.* ¶ 58. As a result, Edington proposed that Val Holms put his mineral assets into a public shell company as part of a reverse merger transaction to create a public company based on those assets. *Id.* ¶ 60.

Edington encouraged Holms to use a shell company called Multisys Language Systems, Inc. ("MLS") to perform a reverse merger transaction involving his mineral assets. *Id.* ¶ 75. Edington drafted a June 28, 2010 Private Placement Memorandum ("PPM") during the summer of 2010 and used it to raise certain investor funds for the entity the MLS reverse merger would create. *Id.* ¶ 82. Edington primarily solicited his investor contacts for the PPM. Edington's family and other affiliates were significant or controlling shareholders, directors, and officers of MLS. These persons, as well as MLS itself, were inactive.

Holms Energy, LLC ("Holms Energy") contributed Holms' previously held oil and gas mineral interests to MLS. *Id.* Throughout the reverse merger process, Edington controlled MLS by installing his daughter and other confidants as significant holders. *Id.* ¶ 91. He also directed Edington II to draft the MLS documents required under the Exchange Act. The MLS reverse

---

[3] This area is commonly known as either the Bakken formation or the Williston Basin. *Id.* ¶ 59

merger transaction closed, and Bakken formed in November 2010. *Id.*[4] ¶ 94. Val Holms served as Bakken's CEO and chairman and Edington allegedly chose the other board members. *Id.* ¶ 93. Edington served as Bakken's outside consultant after the reverse merger.

In January 2011, Edington accompanied Holms to New York City to promote Bakken's stock. They spoke with potential investors and met other individuals to assist in the campaign. *Id.* ¶ 102. In late February 2011, after returning home from the business trip, Holms decided to pursue stock promotional and fundraising efforts in New York City and hired Joel Brownstein as a stock promoter and shareholder liaison. *Id.* ¶ 103. Brownstein acquired an office in New York City at 41 Madison Avenue. *Id.* ¶ 104.

Later in 2011, Bakken discovered Edington misrepresented his background. *Id.* ¶ 105.[5] Bakken later retained outside corporate and securities counsel in New York City to investigate Edington. *Id.* ¶ 109. Defendants opposed the investigation and Edington II wrote several disparaging and unsubstantiated e-mails criticizing outside counsel. *Id.* ¶ 111. In May of 2011, Holms determined that Edington's questionable regulatory past, misstatements, and overall behavior was unacceptable and notified Edington and the other Defendants to cease any further work relating to Bakken. *Id.* ¶ 113.

II. **Procedural History**

On November 4, 2015, Holms and Bakken filed their original Complaint against Defendants alleging RICO violations, fraud, breach of fiduciary duty, tortious interference with

---

[4] As a result, MLS issued 40 million shares to Holms Energy. Edington and the Defendants granted themselves 8 million of the 40 million shares allocated to Holms Energy. *Id.* ¶ 94
[5] Such omitted information included Edington's non-disclosure of Edington's Injunction, censure, and fines issued in connection with an SEC enforcement action by the U.S. District Court for the Eastern District of Washington. *Id.* ¶106

4

prospective business advantage, civil conspiracy, malicious prosecution, conversion, unjust enrichment, and violations of the Securities Exchange Act. ECF No.1. Bakken's FAC, filed on March 28, 2016, withdrew all of Holms' claims and reasserted Bakken's allegations and claims. On May 4, 2017, Defendants moved to stay the action pending the disposition of Bakken's state court actions in Montana and Nevada. ECF No. 68. Plaintiff filed its opposition memorandum on May 26, 2017, and the Court denied the motion on March 15, 2019. ECF Nos. 74,76.

On July 5, 2018, Defendants filed the instant Motion to Dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. ECF No. 99. On the same day, Defendant filed a Motion for Sanctions against Plaintiff for asserting the RICO claim. ECF No. 101. Plaintiff filed its oppositions on July 9, 2018, and Defendants replied on August 1, 2018, ECF Nos. 106, 109-111.[6] The Court considers these motions fully briefed.

## DISCUSSION

The Court will address each Motion individually.

### I. Defendant's Motion to Dismiss

#### A. Legal Standard

On a motion to dismiss, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.2001) (citation omitted); *see also In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 659, 673 (2d Cir. 2013); Fed. R. Civ. Pro. 12(b)(2). Prior to discovery, a plaintiff may survive scrutiny of personal jurisdiction over the Defendants by presenting, "[A] prima facie case [that] requires… fact specific allegations or evidence showing that activity that constitutes the basis of

---

[6] Plaintiff also moved for sanctions against Defendants in their opposition brief.

5

jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998); *see also In re Terrorist Attacks,* 714 F.3d at 673 ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (citation omitted)). All jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor [.]" *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir. 1993). However, the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks,* 714 F.3d at 673 (citations omitted); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59 (2d Cir. 2012).

Here, the Court must engage in a two-part analysis: 1) determine if "a statutory basis" exists to exercise personal jurisdiction," *Marvel Characters, Inc. v. Kirby,* 726 F.3d 119, 128 (2d Cir. 2013); and 2) determine if the exercise of jurisdiction comports with due process, *Sonera Holding B.V. v. Çukurova Holding A.,* 750 F.3d 221, 224 (2d Cir.) (per curiam), cert. denied, ––– U.S. –––, 134 S.Ct. 2888, 189 L.Ed.2d 837 (2014). In the first inquiry, the court "applies the forum state's personal jurisdiction rules" unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks omitted). Plaintiff's RICO allegations incorporate the jurisdiction provisions of 18 U.S.C. § 1965(b), which allows for "national service or process" and, thus, guides the Court's first jurisdictional analysis. *See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.,* 331 F. Supp. 3d 130, 145 (S.D.N.Y. 2018).

### A. RICO Jurisdictional Requirements

The Second Circuit maintains that 18 U.S.C. § 1965 "does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998). *See* 18 U.S.C. § 1965.[7] Rather, the court explained, "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Id.*[8] Once plaintiff establishes the court's personal jurisdiction over one defendant, the statute authorizes the court's nationwide personal jurisdiction over co-defendants where the "ends of justice" so require. *Id.* To comply with due process, any such additional defendant need meet only a "national contacts" test, meaning they must have minimum contacts with the United States. *See Herbstein v. Bruetman*, 768 F.Supp. 79, 81 (S.D.N.Y. 1991). If Plaintiff satisfies these requirements, the Court may also exercise personal jurisdiction over the co-defendants for claims arising out of the same operative facts as the civil RICO claim, even if personal jurisdiction would not otherwise exist in those claims. *See IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-7 (2d Cir. 1993).

### B. Plaintiff Fails to Establish Personal Jurisdiction Over a Single Defendant

---

[7] 18 U.S.C. § 1965, provides, in relevant part: (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs...(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof...(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs. *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 314 (S.D.N.Y. 2010)

[8] *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, No. 01 Civ. 1574, 2002 U.S. Dist. LEXIS 10737, at *20 (E.D.N.Y. 2002) ("The law in this Circuit is clear that the RICO statute 'does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found.'") (quoting *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998)). *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 314 (S.D.N.Y. 2010)

Here, no Defendant is domiciled in New York. Plaintiff seeks to apply 18 U.S.C. § 1965(b) jurisdiction over Edington to impose jurisdiction over all Defendants. As to the other Defendants, Plaintiff's success hinges on whether extending personal jurisdiction over them is "in the interest of justice" or serves "the ends of justice." *PT United Can Co.*, 138 F.3d at 71. However, the Court finds that "the ends of justice" prevent the Court from exercising personal jurisdiction even as to Edington.

Plaintiff must show Edington has sufficient minimum contacts with the state of New York to satisfy RICO's jurisdictional requirements. "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). "[T]he relationship must arise out of contacts that the defendant himself creates with the forum State," not "contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). *See also Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 395 (S.D.N.Y. 2019)

Plaintiff bases its jurisdictional argument on a single trip Edington took with Bakken's former CEO to New York in January of 2011. In addition to seeking investors, the two met with Joel Brownstein and Wesley Paul, who Bakken later hired. FAC. ¶¶ 102-104, 109. Plaintiff failed to allege Edington engaged in any actions beyond these introductory discussions to establish sufficient contacts in New York. Plaintiff also attempts to connect Edington with this forum by referring to the following associations Bakken established with New York after the trip: a New York office; transactions with New York based investment funds; the Eagle Private Equity transaction; a board member; audit committee counsel, and corporate counsel. ECF No. 106, p. 8-9. Edington was not directly involved with these

associations and Plaintiff does not claim he was. *Id.* ¶ 106. Instead, Plaintiff urges the Court to infer that this list of Bakken's New York based business activities constitute "contacts" Edington "created himself" based on his initial trip with the former CEO. Indeed, the Court must accept Plaintiff's allegations as true and construe all factual inferences in its favor. However, finding that Edington's single trip to New York resulted in Bakken's New York associations is not a "reasonable inference." Plaintiff has alleged insufficient facts to show Edington has a single office, employee, bank account or activity connecting him with New York. Therefore, the Court does not have personal jurisdiction over Edington.

As a final point, even if the Court attributed Bakken's New York connections to Edington based on the initial trip, Plaintiff fails to show how extending jurisdiction to the rest of the Defendants is consistent with the "interest of justice." In fact, Plaintiff's arguments suggest that the interest of justice would be served if the case were heard in Nevada. As Plaintiff's state, "[g]iven the physical location of most of the Defendants… it is hard to fathom any argument that a change of venue would be prejudicial to Defendants." ECF No. 106. Pl.'s Opp'n. p. 14. Defendants disagree with this statement as well. Nevertheless, due to Defendants' lack of contacts to the state of New York, the proper venue to hear this case is a question for another court.

**C. New York's "Long-Arm" Statute**

Plaintiff also claims this Court has personal jurisdiction over Edington based on New York's Long-Arm Statute. Under CPLR § 302(a)(1), nondomiciliary defendants are subject to personal jurisdiction if he or she transacts business in New York and the claims against him or her arise out of that business activity. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). The alleged business transaction must be "some act by which the

defendant purposefully avails itself of the privilege of conducting activities within New York." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508, 851 N.Y.S.2d 381, 881 N.E.2d 830 (2007) (internal quotation marks and alterations omitted). However, not all purposeful activity constitutes a "transaction of business" under § 302(a)(1). *See Fischbarg v. Doucet*, 9 N.Y.3d 375, 849 N.Y.S.2d 501, 880 N.E.2d 22, 26 (2007).[9] To determine if a defendant transacts business in New York, courts examine the totality of a defendant's conduct and activities in New York, including "'whether [he] has an on-going contractual relationship with a New York corporation[, ...] whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant ... visited New York for the purpose of meeting with parties to the contract regarding the relationship.'" *See Pincione v. D'Alfonso*, 506 F. App'x 22, 25 (2d Cir. 2012) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir.2004)).

Here, even after construing all allegations in the light most favorable to Plaintiff, and resolving all doubts in its favor, Plaintiff failed to establish the Court's personal jurisdiction over Edington. As explained above, Edington's alleged contacts with New York consisted of a single trip with Bakken's CEO in 2011. Plaintiff argues that Edington, as a consultant on this trip, encouraged Bakken's future transactions within New York and, thus, purposefully availed himself to the laws of the state. However, Edington undertook no affirmative acts in New York with respect to these transactions, especially considering Bakken executed them well after the trip. Further, Plaintiff does not allege Edington was a party to any of its New York transactions. Simply put, Bakken's New York connections are not Edington's. Therefore, Edington's alleged

---

[9] *See also Gap, Inc. v. Stone Int'l Trading, Inc.*, No. 93 Civ. 0638(SWK), 1994 WL 670020, at *7 (S.D.N.Y. Nov. 30, 1994) (internal quotation marks omitted) ("Generally, telephone and mail contacts do not provide a basis for jurisdiction under CPLR § 302(a)(1)").

indirect actions are insufficient to establish personal jurisdiction under either CPLR or RICO. *See Ross v. UKI Ltd.*, No. 02 CIV. 9297 (WHP), 2004 WL 384885, at *6 (S.D.N.Y. Mar. 1, 2004) (court did not have jurisdiction over consultant who undertook no affirmative actions with transactions within New York); *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 318 (S.D.N.Y. 1986); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (N.Y.1988) (must have a "substantial relationship between the transaction and the claim asserted"); *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (N.Y.1981) (must find "some articulable nexus between the business transacted and the cause of action sued upon").

In sum, the Court finds Edington's conduct and contacts within New York insufficient to establish personal jurisdiction over him or any other Defendant in this case. Thus, Defendants' motion to dismiss pursuant to 12(b)(2) is **GRANTED**.[10]

## II. Plaintiff's Motion to Transfer Venue

### A. Legal Standard:

A district court "has power to transfer [a] case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the interest of justice." *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978) (quoting *Volk Corp. v. Art-Pak Clip Art Service*, 432 F.Supp. 1179, 1181 & nn. 4-5 (S.D.N.Y.1977)). *See also Tlapanco v. Elges*, 207 F. Supp. 3d 324, 326 (S.D.N.Y. 2016)

---

[10] Defendants' also move to dismiss the action based on improper venue. Because the Court determines that it lacks personal jurisdiction, it does not reach the venue argument.

(A district court may "transfer venue even if it lacks personal jurisdiction over the defendants.") (quoting *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001)).

Moreover, the Court notes that "a motion to transfer venue is not ordinarily granted at the request of the party who chose the forum in the first place." *Ferrostaal, Inc. v. M/V EAGLE*, No. 02 CIV. 1887 (NRB), 2003 WL 21496689, at *2 (S.D.N.Y. June 30, 2003) (quoting *Ferrostaal, Inc. v. Union Pacific Railroad Co.*, 109 F.Supp. 2d 146, 151 (S.D.N.Y. 2000)). As such, "when a plaintiff is a movant for a change of venue pursuant to 28 U.S.C. § 1404(a), [they] must show a change of circumstances that has taken place since the filing of suit in order to prevail, since the plaintiff initially chose the forum." *Harry Rich Corp. v. Curtiss–Wright Corp.*, 308 F.Supp. 1114, 1118 (S.D.N.Y. 1969). "A plaintiff moving to transfer venue has already had an opportunity to choose the venue when filing the action. Therefore, a plaintiff moving to transfer must demonstrate, inter alia, that after the action was filed there was a change of circumstances that warrants transferring the action to the transferee forum." *Ferrostaal*, 109 F.Supp. 2d at 151.

The Court must now determine whether transferring this case is in the interest of justice. Plaintiff contends its circumstances have sufficiently changed because they are now involved in two additional actions in Nevada (the "Nevada Litigation") since commencing this action. The new actions involve shareholder derivative claims and stock ownership disputes between parties associated with Bakken. Pl. Mem. at 10; Anderson Decl. ¶¶ 3-9. However, this "change of circumstance" does not make Nevada a proper venue for the present case.

Not only did Plaintiff fail to show a sufficient change in circumstance, Plaintiff failed to prove Nevada is a proper venue. Plaintiff's argument makes no allegations as to how the Nevada Litigation is sufficiently relevant to this case. Moreover, the following factors

12

suggest transferring the case to Nevada are contrary to the interest of justice: (1) All Defendants are not domiciled in Nevada; (2) None of the Defendants is a party in the Nevada litigation; (3) There are no allegations of events in Nevada giving rise to the Plaintiff's claims in the present case; and (4) Plaintiff's did not contend that decisions in the Nevada Litigation disputes would conflict with decisions in this case. Plaintiff did not provide any factual or party nexus connecting the present case to the state of Nevada. Therefore, refusal to transfer would not severely prejudice either parties and Plaintiff's motion to transfer is **DENIED**.

### III. Motions for Sanctions

#### A. Legal Standard

"A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." *Penthouse Intern., Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 386 (2d Cir. 1981) (collecting cases). Yet "[b]ecause of their [ ] potency," the Supreme Court has cautioned that these "inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citation omitted).

To constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands. *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989), cert. denied, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). Therefore, not all unsuccessful legal arguments are frivolous or warrant sanction. *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990).

#### B. RICO and the Private Securities Litigation Reform Act ("PSLRA")

In a civil RICO action, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). However, Section 107 of the PSLRA provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). The purpose of PSLRA's "barring civil RICO claims based on allegations of securities fraud ... was to prevent litigants from using artful pleadings to boot-strap securities fraud cases into RICO cases, with their threat of treble damages." *Vinkemeier v. Jaco Fin.* LLC, No. 13CV5934VSBKNF, 2017 WL 10591576, at *3 (S.D.N.Y. Feb. 22, 2017), report and recommendation adopted, No. 13CV5934VSBKNF, 2018 WL 4850556 (S.D.N.Y. Oct. 5, 2018) (quoting *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011)). Thus, "section 107 of the PSLRA bars civil RICO claims alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant." *Id.* at 277.

Here, Bakken alleged securities fraud claims under Section 10(b) of the Securities Exchange Act. FAC ¶ 641.[11] In each of its Claims for Relief, Bakken reasserted all previous allegations as the basis for each claim and specifically alleged the RICO claims and the securities claims rely on the same exact facts. Defendants argue that Bakken predicated its RICO claims on facts that constitute securities fraud and thus violated the PSLRA exemption in §1964(c). By

---

[11] "Section 10(b) of the Exchange Act constitutes the basic anti-fraud provisions of the federal securities laws, prohibiting any person from using any manipulative or deceptive device in connection with the purchase or sale of any security, in contravention of such rules or regulations as the SEC may proscribe." FAC, ¶ 641.

14

filing the RICO claim, Defendants argue, Plaintiff "overlooked [and] disregarded statutory and case law authority and their responsibilities," thus warranting sanctions. The Court disagrees.

Defendants' analysis may be correct that Plaintiff's RICO allegations in the FAC are practically identical to the "securities fraud" allegations. However, these assertions create a bona fide dispute of fact or law and require further adjudication. Indeed, Plaintiff argues the predicate facts and the underlying conduct regarding its RICO claim are outside the realm of securities fraud. The FAC arguably pleads facts and circumstances involving wire or mail fraud that bear no reasonable relationship to the "sale or purchase" of securities. The Court will not comment on the overall strength of Plaintiff's argument, but it does acknowledge that this theory is not so devoid of strength to warrant sanctions. *See* e.g., *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable. The operative question is whether the argument is frivolous, i.e., the legal position has 'no chance of success,' and there is no reasonable argument to extend, modify or reverse the law as it stands." (internal citations omitted)). Therefore, Defendants' request for sanctions is **DENIED**.

## CONCLUSION

For the reasons stated above, Defendants motion to dismiss is **GRANTED** without prejudice to allow repleading, if desired, in the appropriate court; Plaintiff's motion to transfer is **DENIED**; and each party's motion for sanctions is **DENIED**. The Clerk of Court is directed to terminate Docket Nos.99 and 101 and to close the case in this District.

**SO ORDERED.**

Dated: March 29, 2019
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**

15